UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.L.L. CONSTRUCTION, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17-cv-02367-AGF |
| | ) |
| METROPOLITAN ST. LOUIS SEWER | ) |
| DISTRICT, JAMES FAUL, RUBY | ) |
| BONNER, RONALD BOBO, MICHAEL | ) |
| YATES, and JAMES I. SINGER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motions of Defendants Metropolitan St. Louis Sewer District ("MSD") and five of the six members of MSD's Board of Trustees ("Trustees"), in their individual capacities, to dismiss the complaint of Plaintiff ALL Construction, LLC ("ALL") for lack of standing and failure to state a claim. ECF Nos. 10 & 12. In the event that the Court does not dismiss the complaint, Defendants have also moved to strike certain allegations. ECF No. 8. For the following reasons, the Court will deny the motion to strike and will hold the motion to dismiss in abeyance, subject to ALL amending its complaint.

## BACKGROUND

As alleged in the complaint, ALL is a construction company that aids in the construction of sewer systems, and has worked as a general contractor or subcontractor

for MSD for approximately 20 years. MSD is a "municipal corporation and political subdivision of the State of Missouri, organized and existing pursuant to powers conferred by Article VI, Section 30 of the Missouri Constitution." Compl., ECF No. 5 ¶ 2.

MSD has a policy providing that "a bidder on non-building construction projects exceeding $50,000.00 must utilize Minority Business Enterprises (African American) on 17% of the project. A bidder who fails to achieve this percentage of MBE participation will have its bid rejected as nonresponsive, unless the bidder can demonstrate a good faith effort to achieve the MBE goal." Compl. ¶ 11. ALL qualifies as a "Minority Business Enterprise" ("MBE") under MSD's policy in that its owner, Anton Lumpkins, is African American. ALL was awarded MSD's "Minority Contractor of the Year" in 2000.

ALL has worked as an MBE subcontractor for general contractors that frequently do business with MSD, including Bates Utility Company ("Bates") and SAK Construction, LLC ("SAK"). Beginning in 2016, Bates included ALL as a subcontractor on several projects for MSD, with ALL helping Bates achieve MSD's MBE requirements. However, a Chief Estimator and Project Manager with Bates soon expressed his "distaste" for MSD's MBE requirements, and "beginning in early 2016, Bates used ALL on bids to meet MSD's MBE participation requirements so that it would be awarded MSD projects but did not actually use ALL on these projects," at times not even calling ALL to the job site. Compl. ¶¶ 23, 27, 29.

ALL contacted MSD staff in an effort to obtain Bates's compliance with MSD's MBE participation requirements. Lumpkins, ALL's owner, "believed that ALL was not

2

the only MBE that was being exploited on MSD projects and that other MBEs were being listed on bids to meet MSD's MBE participation requirements and then not being used on the projects." Compl. ¶ 33.

ALL alleges that "[o]n or about April 14, 2016, Lumpkins, as a private citizen, spoke at a public meeting of MSD's Board of Trustees." Compl. ¶ 34. Lumpkins told the Board about the issues that he and other minority subcontractors were having with Bates. Specifically, Lumpkins told the Board that Bates was using ALL and other MBEs in bids to achieve MSD's diversity requirements, while excluding them from performing work on projects. Compl. ¶ 35. During the meeting, Defendant James Singer, one of the Trustees, "noted that Lumpkins was 'like a whistleblower' given the 'pretty serious' allegations regarding Bates'[s] circumvention of MSD's MBE participation requirements." Compl. ¶ 37.

According to the complaint, a few days after the meeting, "MSD staff began contacting ALL complaining about various issues with ALL's work," and "MSD also refused to approve a change order on an ALL project, forcing it to pay thousands of dollars out of pocket[.]" Compl. ¶¶ 41-42. Then, on June 19, 2016, "ALL was removed from the Small Contractor Program."[1] Compl. ¶ 44. ALL further alleges that "the most egregious retaliation" occurred during the bid and award process for an MSD project known as the "Deer Creek Project." On September 29, 2016, MSD's professional staff of engineers awarded the Deer Creek Project to a general contractor, Jay Dee and Frontier-

---

[1] The complaint contains no further details regarding the nature of the Small Contractor Program.

3

Kemper ("Jay Dee"), who had submitted the lowest and best bid of $147,777,777.77. Jay Dee listed ALL as a subcontractor in the bid to perform $5 million worth of tunneling construction work, helping Jay Dee meet MSD's MBE requirements.

SAK, another general contractor that had previously employed ALL, had also submitted a bid for the Deer Creek Project and lost. SAK thereafter filed with MSD a formal protest of the award of the Deer Creek Project to Jay Dee. In its protest, SAK claimed that ALL was not qualified to do the tunneling work on the Deer Creek Project.

MSD's professional staff of engineers denied the protest, finding that the assertions were without merit and that ALL was a qualified subcontractor. SAK appealed, and on November 29, 2016, MSD's professional staff denied the appeal. Nevertheless, on December 8, 2017, the Trustees "voted against introducing the ordinance that would have approved MSD's professional staff's award of the bid to Jay Dee," by a 5-1 vote.[2] According to ALL, "the MSD Board of Trustees has rarely—if ever—refused to ratify a notice of award to a contractor recommended by its professional staff of engineers," and in the last five years, the Trustees have ratified every single notice of award given by MSD's professional staff for projects in excess of $10 million with the "lone exception of Jay Dee and the Deer Creek Project." Compl. ¶¶ 63-64.

The following day, December 9, 2016, MSD's Director of Engineering wrote two letters to Jay Dee. The first letter stated that MSD was "rescinding the Notice of Award previously issued . . . for the [Deer Creek Project] due to the proposed contract not being

---

[2] Although it is not clear from the complaint, it may be inferred that the five Trustees who voted not to approve the award of the bid to Jay Dee are the five Trustees named as Defendants in this case.

4

confirmed." The second letter stated, "as a follow up to the recension of the Notice of Award," that MSD "object[ed] to the utilization of ALL Construction as a subcontractor" for the Deer Creek Project, and that MSD was requesting that Jay Dee submit "an acceptable MBE substitute(s) to ALL Construction." Compl. ¶¶ 66-67. "MSD's request that Jay Dee remove [ALL] from the Deer Creek Project was, according to [MSD's Executive Director,] Brian Hoelscher, the 'first time in MSD's staff's recollection' that it had ever specifically requested the removal of a single subcontractor." Compl. ¶ 69. Jay Dee subsequently "removed and replaced ALL from the Deer Creek Project, as required by MSD and its Board of Trustees." Compl. ¶ 73.[3]

ALL alleges that the "Board of Trustees caused [ALL] to be removed a subcontractor from the Deer Creek Project, resulting in financial injury to [ALL]," and that the "Board of Trustees has final policymaking authority in MSD." Compl. ¶¶ 78-79. ALL further alleges:

> Lumpkins'[s] speech, and more specifically, his expressions as a private citizen to the Board of Trustees that Bates was not complying with MSD's MBE participation requirements on its projects (and potentially engaging in fraud as it relates to such participation) designed to ameliorate the legacy of race discrimination in the St. Louis-area construction community, made at a reasonable time and in a reasonable manner, was a motivating factor and/or played a part in the decisions to retaliate against [ALL] by among other things, removing it from the Deer Creek Project.

Compl. ¶ 80.

---

[3] Although the complaint does not allege whether Jay Dee won the contract for the Deer Creek Project after removing ALL from its bid, as discussed below, ALL acknowledges in its response that Jay Dee did not win the contract after removing ALL.

5

ALL filed suit in state court on August 9, 2017, asserting claims under 42 U.S.C. § 1983 against MSD and the Trustees, in their individual capacities, for First Amendment retaliation. Defendants removed the case to this Court on September 6, 2017, on the basis of federal question jurisdiction.

## ARGUMENTS OF THE PARTIES

**Motions to Dismiss**

Defendants argue that ALL lacks standing to prosecute the claims alleged in the complaint because those claims are based on the rights of Lumpkins and Jay Dee. Specifically, Defendants note that the complaint states that Lumpkins was speaking "as a private citizen" at the April 14, 2016 meeting, and there is no allegation that Lumpkins was speaking as an owner or agent of ALL. Further, Defendants argue that Jay Dee was the only party alleged to have suffered direct injury from MSD's refusal to confirm a contract with Jay Dee for the Deer Creek Project. Defendants concede that "courts have recognized a prospective contractor's claim for First Amendment retaliation in the context of bidding for a government project," but they argue that "no court has extended such claims to subcontractors in bids who are indirectly affected." ECF No. 13 at 7. Defendants contend that ALL's claims are wholly derivative of Jay Dee's alleged injury, and accordingly, ALL's claims fail for lack of standing.

Alternatively, Defendants argue that ALL has failed to state a cause of action for First Amendment retaliation because ALL has not pled sufficient facts to demonstrate that ALL spoke on a matter of public concern. Defendants further argue that ALL has failed to sufficiently plead that any of the Trustees personally took any retaliatory action

6

against ALL, or that the alleged retaliation was the result of an MSD policy or custom, so as to hold Defendants liable under § 1983. Finally, the Trustees argue that, to the extent ALL's claims are based on the Trustees' actions in voting against introducing the ordinance to approve the Deer Creek Project contract with Jay Dee, the Trustees are protected from suit by absolute legislative immunity.

In response, ALL argues that it has standing to pursue its claims because it suffered direct injury in retaliation for protected speech made by its owner, Lumpkins. ALL argues that First Amendment protections extend to corporations and limited liability companies, like ALL, and such entities can only act through their agents, such as Lumpkins. ALL alleges that it has sufficiently pled that Lumpkins spoke on behalf of ALL at the April 14, 2016 meeting.[4]

Next, ALL argues that it is not asserting any claim based on Jay Dee's injury. Rather, ALL states that it has sufficiently alleged direct injury, including MSD's refusal to approve a change order for ALL, MSD's removal of ALL from its Small Contractor Program, and "most importantly," the Trustees' and MSD's order to Jay Dee to remove ALL as a subcontractor from Jay Dee's bid for the Deer Creek Project. With respect to the removal of ALL from the Deer Creek Project bid, ALL argues that it suffered damage in the form of "lost profits" when it was prevented from performing the subcontract work. In a footnote, ALL states that "[t]o the extent that Defendants might argue that ALL was not injured because the contract with Jay Dee was never confirmed, and

---

[4] ALL also requests, if necessary, leave to amend its pleading "to more clearly allege that Lumpkins was acting as the owner and president of ALL when he engaged in his protected speech." ECF No. 19 at 5.

7

therefore, ALL could not suffer lost profits, the contract with Jay Dee was not confirmed due to ALL's removal from it." ECF No. 19 at 6 n.4.

ALL also argues that it has adequately stated a claim for First Amendment retaliation against MSD and the Trustees. ALL argues that its speech at the April 14, 2016 meeting was speech on a matter of public concern because the inclusion of minority businesses on public works projects is a matter of particular political and social importance to the St. Louis community. Further, ALL contends that it has adequately pled the Trustees' involvement in the alleged retaliatory action by pleading that the Trustees caused ALL to be removed as a subcontractor from the Deer Creek Project, and that ALL was removed from the MSD Small Contractor Program. ALL argues that these actions are also attributable to MSD because, as alleged in the complaint, the Trustees have final policymaking authority for MSD. Finally, ALL argues that the Trustees are not protected by absolute legislative immunity because the alleged retaliatory actions here, such as causing a single subcontractor to be removed from a bid, were not legislative acts.

**Motion to Strike**

In the event that the Court does not dismiss the complaint, Defendants seek to strike all allegations referring to ALL as a "whistleblower" or stating that ALL "blew the whistle" on any alleged misconduct. Defendants argue that such allegations should be stricken as immaterial to ALL's First Amendment retaliation claim. Defendants note, and ALL agrees, that the complaint does not state a claim for whistleblower protection under federal or state statutory law.

8

**DISCUSSION**

**Motions to Dismiss**

On a motion to dismiss for lack of standing or for failure to state a claim, the reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (failure to state a claim); *E.L. by White v. Voluntary Interdistrict Choice Corp.*, 864 F.3d 932, 935 (8th Cir. 2017) (standing). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Torti*, 868 F.3d at 671 (citations omitted).

1. **Standing**

"Article III standing is a threshold question in every federal court case," and "requires three elements: (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision." *E.L. by White*, 864 F.3d at 935 (citations omitted). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650-51 (2017) (citations omitted).

As an initial matter, the Court rejects Defendants' arguments that ALL is attempting to assert a claim based on the rights of Lumpkins as an individual or "private

citizen."[5] It is reasonably inferred from the complaint's allegations as a whole that Lumpkins was speaking as an owner or agent of ALL when he engaged in allegedly protected speech during the April 14, 2016 meeting.

As to Defendants' other challenge to standing, whether ALL has standing to pursue a First Amendment retaliation claim based on its removal as a subcontractor from Jay Dee's bid for the Deer Creek Project turns on whether Defendants ultimately awarded the contract for the Deer Creek Project to Jay Dee after ALL was removed. "Courts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party." *Duran v. City of Corpus Christi*, 240 F. App'x 639, 641-42 (5th Cir. 2007) (unpublished). For example, "a corporate officer cannot maintain a personal action against a third party for harm caused to the corporation, unless the officer alleges a direct injury not derivative of the company's injury." *Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969, 973 (8th Cir. 2008).

If after removing ALL as a subcontractor, Jay Dee still lost the contract for the Deer Creek Project, the direct injury was to Jay Dee, and any injury to ALL, whether lost profits or otherwise, was merely derivative of Jay Dee's injury. *See, e.g., Duran*, 240 F. App'x at 641-42 (holding that a subcontractor plaintiff lacked standing to assert First Amendment retaliation claim based on the potential lost profits from its role in a contract between a third-party claims administrator and the city, based upon the city's nonrenewal

---

[5] ALL likely alleges that Lumpkins was speaking as a "private citizen" in order to address the United States Supreme Court's holding that, to warrant First Amendment protection, public employees or contractors must be speaking "as a citizen" on a matter of public concern and not "pursuant to their official duties" as government employees or contractors. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

10

of the contract in retaliation for the subcontractor's speech, because the plaintiff's "potential injury . . . [was] at best only derivative of the third-party claims administrator's injury); *Anaren Microwave, Inc. v. Loral Corp.*, 855 F. Supp. 634, 637-38 (S.D.N.Y. 1994) ("[I]n this case no rational jury could conclude that [the plaintiff subcontractor's] alleged lost subcontract profits are not merely derivative of the prime contractor . . . injuries. [The defendant] has allegedly injured [the subcontractor plaintiff] only insofar as [its actions] first injured [the prime contractor] and thus left [the prime contractor] without a contract . . . for which to hire any subcontractor.").

Although, as noted above, the complaint does not allege whether Jay Dee won the contract for the Deer Creek Project after removing ALL, ALL acknowledges in its response that Jay Dee did not win the contract after removing ALL. Therefore, it appears that ALL lacks standing to pursue a claim for its alleged injuries arising out of its removal as a subcontractor from Jay Dee's bid for the Deer Creek Project.

ALL's other allegations of retaliation, namely, that it was removed from MSD's Small Contractor Program and that it was forced to pay out of pocket costs after MSD refused to approve its change order, allege direct injuries to ALL sufficient to support standing. Defendants do not dispute this contention. But, as discussed below, ALL's current complaint fails to contain sufficient factual allegations to state a claim for First Amendment retaliation against Defendants for these two alleged retaliatory actions.

2. **Failure to State a Claim**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face." *Wartman v. United Food & Commercial Workers Local 653*, 871 F.3d 638, 640 (8th Cir. 2017) (citation omitted). To prevail under § 1983, ALL must show 1) that Defendants acted under the color of state law,[6] and 2) that Defendants' actions deprived ALL of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Moreover, as to each Defendant, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

"The Supreme Court has extended to government contractors [as well as those with "a pre-existing commercial relationship" with the government and those who are "regular provider[s] of services" to the government] the retaliation cause of action it had previously recognized for government employees." *Heritage Constructors, Inc. v. City of Greenwood, Ark.*, 545 F.3d 599, 601-02 (8th Cir. 2008) (citing *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 673 (1996); *O'Hare Truck Serv. Inc., v. City of Northlake*, 518 U.S. 712, 715 (1996)).

To establish retaliation in violation of the First Amendment, a government contractor must prove: (1) it engaged in activity protected by the First Amendment; (2) the defendants took an adverse action against it; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse action. *Lyons v. Vaught*, No. 16-1062, 2017 WL 5622816, at *3 (8th Cir. Nov. 22, 2017).

The threshold question in determining whether speech is constitutionally protected is "whether the [contractor] spoke as a citizen and on a matter of public concern."

---

[6] Defendants do not dispute that they acted under the color of state law.

*Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 655 (8th Cir. 2007) (citing *Garcetti*, 547 U.S. at 418; *see also L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 808 (8th Cir. 2012) ("When the government takes adverse action against . . . an independent contractor, or another actor with whom the government has a comparable pre-existing commercial relationship, the First Amendment is implicated only when the speech or petition that motivated the retaliation involves matters of public concern.") .

Defendants do not dispute that, as an independent contractor, ALL had a preexisting relationship with MSD sufficient to warrant protection from First Amendment retaliation. The Court likewise finds that the complaint is sufficient in this regard, noting particularly the allegations that ALL has regularly acted as a contractor and subcontractor for MSD projects and was part of (and subsequently removed from) MSD's Small Contractor Program. *See Heritage Constructors*, 545 F.3d at 602 (recognizing that "being removed from an official list of contractors authorized to perform public services" may establish a "pre-existing commercial relationship" with the government entity for purposes of a First Amendment retaliation claim) (citing *O'Hare Truck Serv., Inc.*, 518 U.S. at 714.

Whether ALL was speaking as a citizen on a matter of public concern depends on the "content, form, and context of the speech, as revealed by the whole record." *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 833 (8th Cir. 2015) (citation omitted). "Although this is a question of law, it is, to say the least, a fact-intensive inquiry." *Schilcher v. Univ. of Ark.*, 387 F.3d 959, 963 (8th Cir. 2004). Based on the limited facts available at this stage, the Court cannot say as a matter of law that

13

ALL's speech was "primarily motivated" by its private interests, rather than the public concern regarding the minority hiring practices of MSD. *See Anzaldua*, 793 F.3d at 833 ("When speech relates both to [a contractor's] private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern."); *Jean-Gilles v. Cty. of Rockland*, 195 F. Supp. 2d 528, 533-34 (S.D.N.Y. 2002) (holding that speech on racial issues and minority hiring practices in the county was a matter of public concern).

However, ALL has failed to allege sufficient facts to demonstrate that any of the Trustee Defendants was personally involved in or responsible for removing ALL from MSD's Small Contractor Program or refusing to approve ALL's change order.[7] Nor does ALL allege any facts demonstrating that MSD was responsible for these actions. *See Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) ("A municipality bears responsibility for its own torts, not the torts of its employees. It is when execution of a government's policy by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.") (citations omitted).

Therefore, the complaint is subject to dismissal for failure to state a claim. But before dismissing the complaint, the Court will give ALL a chance to amend its

---

[7] Unlike ALL's allegations regarding the refusal to award Jay Dee the contract for the Deer Creek Project, ALL's allegations regarding its own removal from the Small Contractor Program and the denial of its change order do not reference any vote or other action by the individual Trustee Defendants, as opposed to other actors within MSD.

complaint to add additional facts with regard to each individual Defendant's involvement in these alleged acts of retaliation.

**Motion to Strike**

Courts may strike from a pleading any "immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Because "striking a party's pleadings is an extreme measure," motions to strike are "viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000). The decision to grant or deny a motion to strike lies within the sound discretion of the district court. *Id.*

Upon careful consideration of the parties' arguments and the complaint, the Court declines to strike the disputed allegations. The references to "whistleblower" are, for the most part, alluding to one of the Trustees' alleged statement that Lumpkins was acting "like a whistleblower" by speaking out about Bates's circumvention of MSD's MBE participation requirements at the April 1, 2016 meeting. The Court does not believe that these allegations are so immaterial or prejudicial as to warrant striking.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motions to dismiss the complaint (ECF Nos. 10 &12) are **HELD IN ABEYANCE**, subject to Plaintiff's filing, no later than **14 days** after the date of this Memorandum and Order, an amended complaint alleging additional facts that demonstrate each individual Defendant's personal involvement in or responsibility for the alleged acts of retaliation, as set forth above. ECF Nos. 10 & 12.

Plaintiff's failure to comply with this Order may result in the granting of Defendants' motion to dismiss for failure lack of standing and failure to state a claim.

**IT IS FURTHER ORDERED** that, no later than **14 days** after Plaintiff files its amended complaint, Defendants shall file either an answer to the amended complaint or a supplemental brief in support of their motions to dismiss explaining why the amended complaint is still subject to dismissal.

**IT IS FURTHER ORDERED** that Defendants' motion to strike is **DENIED**. ECF No. 8.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of December, 2017.