UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.L.L. CONSTRUCTION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-cv-02367-AGF |
| | ) | |
| METROPOLITAN ST. LOUIS SEWER | ) | |
| DISTRICT; JAMES FAUL, RUBY | ) | |
| BONNER, RONALD BOBO, MICHAEL | ) | |
| YATES, and JAMES I. SINGER, in their | ) | |
| individual capacities as members of the | ) | |
| Board of Trustees of the Metropolitan St. | ) | |
| Louis Sewer District; and BATES | ) | |
| UTILITY CO., INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motions of Defendants Metropolitan St.

Louis Sewer District ("MSD") and the five members of MSD's Board of Trustees

("Trustees") named as Defendants in their individual capacities,[1] to dismiss Plaintiff ALL

Construction, LLC's ("ALL") amended complaint for lack of standing and failure to state

a claim. ECF Nos. 10 & 12. On December 14, 2017, the Court held these motions in

abeyance subject to ALL filing the amended complaint now under consideration. After

ALL filed the amended complaint, the Court permitted the parties to supplement their

briefs in support of and opposition to the motions to dismiss. For the following reasons,

the motions will be granted in part and denied in part.

---

[1]      In total, there are six members of MSD's Board of Trustees.

Newly-named Defendant, Bates Utility Co., Inc. ("Bates"), has separately moved to dismiss the amended complaint for failure to state a claim. ECF No. 46. For the reasons set forth below, the Court will deny Bates's motion.

## BACKGROUND

The facts alleged in the complaint have been described in detail in the Court's December 14, 2017 Memorandum and Order (ECF No. 29) but will be recounted here as necessary to address the complaint's amendment. ALL is a construction company that aids in the construction of sewer systems and has worked as a general contractor or subcontractor for MSD for approximately 20 years.

MSD has a policy providing that a bidder on non-building construction projects exceeding $50,000 must utilize a Minority Business Enterprise ("MBE") on at least 17% of the project. A bidder who fails to achieve this percentage of MBE participation will have its bid rejected as nonresponsive unless the bidder can demonstrate a good faith effort to achieve the MBE goal. ALL qualifies as an MBE under MSD's policy in that its owner, Anton Lumpkins, is African American.

ALL has worked as an MBE subcontractor for general contractors that frequently do business with MSD, including Bates. ALL was awarded MSD's "Minority Contractor of the Year" in 2000. Beginning in 2016, Bates included ALL as a subcontractor on several projects for MSD in order to satisfy MSD's MBE requirements. However, according to the amended complaint, a Chief Estimator and Project Manager at Bates at some point expressed his "distaste" for MSD's MBE requirements, and "Bates' agents explicitly stated [their] hostility towards programs designed to benefit African-Americans

and other racial minorities." ECF No. 35 ¶¶ 20, 104. Then, "beginning in early 2016, Bates used ALL on bids to meet MSD's MBE participation requirements so that it would be awarded MSD projects but did not actually use ALL on these projects," at times not even calling ALL to the job site. *Id.* ¶¶ 24, 27. ALL alleges, "[u]pon information and belief[,] Bates, a white-owned company, was either pocketing the money it represented to MSD it had earmarked for its MBE subcontractors, including ALL[,] or used other white-owned companies to perform this work . . . ." *Id.* ¶ 27.

ALL contacted MSD staff to complain about Bates's non-compliance with MSD's MBE participation requirements. ALL believed that it was not the only MBE that was being "exploited" by Bates on MSD projects and that other MBEs were being listed on bids to meet MSD's MBE participation requirements and then not being used on the projects. *Id.* ¶ 32.

On or about April 14, 2016, Lumpkins spoke at a public meeting of MSD's Board of Trustees. Lumpkins told the Board about the issues that he and other minority subcontractors were having with Bates. Specifically, Lumpkins told the Board that Bates was using ALL and other MBEs in bids to achieve MSD's diversity requirements while excluding them from performing work on projects. After Lumpkins informed the Board of Bates's noncompliance with the MBE requirement, the Board did not approve the award of a project to Bates and ultimately suspended Bates from bidding on any projects as a general contractor for one year.

ALL alleges that, notwithstanding this suspension, MSD permitted Bates to continue to present change orders on MSD projects listing ALL as an MBE. ALL alleges

that the "Trustees were aware that Bates continued to use ALL as an MBE contractor on its bid forms and change-order forms submitted to MSD, even though ALL was not performing the actual work, and nonetheless continued to approve such bids and change-orders, effectively turning a blind eye to Bates' discrimination against ALL, despite MSD's minority participation requirements." *Id.* ¶ 48.

A few days after the April 14, 2016 meeting, "MSD staff began contacting ALL complaining about various issues with ALL's work," and "[w]hen ALL demanded proof of alleged deficiencies in its work, MSD refused to provide any evidence of same." *Id.* ¶ 41. On June 19, 2016, Lumpkins "again went to the Trustees . . . informing [them] of the retaliation ALL had experienced for his complaints about Bates. Lumpkins notified the Trustees that MSD staff had begun citing ALL for deficient work while refusing to provide any evidence." *Id.* ¶ 43. The Trustees "took no action" in response to Lumpkin's complaints, and on June 19, 2016, "ALL was removed from the Small Contractor Program."[2] *Id.* ¶¶ 44-45. ALL alleges that "[t]he Trustees were notified and/or consulted regarding MSD's staff's intention to remove ALL from the Small Contractor Program, and tacitly approved, consented to, and/or ratified the [action]." *Id.* ¶ 46.

ALL further alleges, as it did in the original complaint, that Defendants retaliated against it by requiring that a general contractor, Jay Dee and Frontier-Kemper ("Jay Dee"), remove ALL as a subcontractor from an MSD project known as the "Deer Creek

---

[2]     Neither the original nor amended complaint contains any description of the Small Contractor Program or explanation of what this program entails.

Project." Jay Dee had included ALL as a subcontractor in its bid for the project, and MSD's professional staff issued a notice of award to Jay Dee after determining that Jay Dee's was the lowest and best bid. However, a competitor of Jay Dee protested the staff's decision because of Jay Dee's inclusion of ALL as a subcontractor. The competitor alleged that ALL was unqualified to perform the work.

ALL alleges that, on December 8, 2017, the Trustees "voted against introducing the ordinance that would have approved MSD's professional staff's award of the bid to Jay Dee." *Id.* ¶ 63. The five Trustees who voted not to approve the award of the contract to Jay Dee are the five Trustees named as Defendants in this case. ALL alleges that the Trustees swore in affidavits[3] that the reason they voted against approving the award of the Deer Creek Project contract to Jay Dee was because of Jay Dee's inclusion of ALL as a subcontractor, and that one Trustee "even stated that he objected to ALL because of the Bates matter." *Id.* ¶¶ 64-65. Jay Dee subsequently removed ALL as a subcontractor, but Jay Dee was still not awarded the Deer Creek Project contract.

ALL alleges that the Trustees made statements in sworn affidavits suggesting that Jay Dee was not awarded the contract because Jay Dee had originally included ALL on its bid. According to ALL, "the MSD Board of Trustees has rarely—if ever—refused to ratify a notice of award to a contractor recommended by its professional staff of engineers," and in the last five years, the Trustees have ratified every single notice of award given by MSD's professional staff for projects in excess of $10 million with the "lone exception of Jay Dee and the Deer Creek Project." *Id.* ¶¶ 61-62.

---

[3]     The complaint does not describe the context in which these affidavits were made.

ALL asserts claims against the Trustees and MSD for First Amendment retaliation (Count I), and against the Trustees, MSD, and Bates for violation of 42 U.S.C. § 1981 (Count II). ALL alleges that the Trustees are the final policy-makers for MSD.

## DISCUSSION

On a motion to dismiss for lack of standing or for failure to state a claim, the reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) (failure to state a claim); *E.L. by White v. Voluntary Interdistrict Choice Corp.*, 864 F.3d 932, 935 (8th Cir. 2017) (standing). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Torti*, 868 F.3d at 671.

### 1. Standing

"Article III standing is a threshold question in every federal court case" and "requires three elements: (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision." *E.L. by White*, 864 F.3d at 935. "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650-51 (2017).

In their supplemental briefs, MSD and the Trustees argue that, as the Court previously suggested, ALL lacks standing to pursue a claim based on Jay Dee's loss of the Deer Creek Project contract because ALL's injury is merely derivative of Jay Dee's injury. "Courts generally refuse to recognize standing based on economic harm that is

merely a consequence of an injury suffered by another party." *Duran v. City of Corpus Christi*, 240 F. App'x 639, 641-42 (5th Cir. 2007) (unpublished). For example, "a corporate officer cannot maintain a personal action against a third party for harm caused to the corporation, unless the officer alleges a direct injury not derivative of the company's injury." *Alternate Fuels, Inc. v. Cabanas*, 538 F.3d 969, 973 (8th Cir. 2008).

In *Duran*, the Fifth Circuit held that a subcontractor plaintiff lacked standing to assert a First Amendment retaliation claim based on the potential lost profits from its role in a contract between a third-party claims administrator and the city, based upon the city's nonrenewal of the contract in retaliation for the subcontractor's speech. *Duran*, 240 F. App'x at 641-42. The Fifth Circuit reasoned that the plaintiff's "putative injury . . . [was] at best only derivative of the third-party claims administrator's injury." *Id.* at 42.

Likewise, in *Pagan v. Calderon*, 448 F.3d 16 (1st Cir. 2006), the First Circuit held that an independent consultant for a company lacked standing to pursue a First Amendment retaliation claim based on the government's interference with the company's loan request, even though it was the consultant's protected conduct that precipitated the interference. *Pagan*, 448 F.3d at 30. The First Circuit concluded that "when a government actor discriminates against a corporation based on a protected trait of a corporate agent, it is the corporation—and only the corporation—that has standing to seek redress." *Id.*

Both appellate courts held that "the standing inquiry turns on the plaintiff's injury, not the defendant's motive," so the "fact that the animus toward the agent sparked mistreatment of the principal does not create an exception to the rule that an agent's

section 1983 claim can flourish only if he alleges that he personally suffered a direct, nonderivative injury." *Duran*, 340 F. App'x at 643 (quoting *Pagan*, 448 F.3d at 30). Moreover, "[i]t is not enough for the agent to allege an injury that is qualitatively different from that suffered by the principal; rather, the agent must allege an injury that does not derive from the injury to the principal." *Pagan*, 448 F.3d at 30.

Finding these authorities persuasive, the Court will grant the motions to dismiss ALL's First Amendment retaliation claims based on the loss by Jay Dee of the Deer Creek Project contract, for lack of standing.

## 2. Failure to State a Claim

Defendants do not dispute that ALL has standing to assert its remaining claims for First Amendment retaliation based on its removal from the Small Contractor Program and for violation of § 1981. The question is whether ALL sufficiently states these claims.

### a. First Amendment Retaliation - Removal From Small Contractor Program

To prevail under § 1983, ALL must show (1) that the defendants acted under the color of state law,[4] and (2) that the defendants' actions deprived the plaintiff of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). Moreover, as to each Defendant, "[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

---

[4]     The Trustees and MSD do not dispute that they acted under the color of state law.

8

The Trustees and MSD argue that ALL has not sufficiently pleaded that each Defendant directly caused the alleged constitutional violation.[5]  To establish individual supervisory liability under § 1983, a plaintiff must show that the individual supervisor was "personally or directly involved in the alleged violation of plaintiffs' constitutional rights, or that, in her capacity as a supervisor, she knew about the allegedly unlawful conduct and facilitated, approved, condoned, or deliberately ignored the conduct . . . ." *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1370 (8th Cir. 1996).  And "[w]here, as here, the alleged constitutional violation requires proof of an impermissible motive, the amended complaint must allege adequately that the defendant acted with such impermissible purpose, not merely that he knew of a subordinate's motive." *L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.*, 673 F.3d 799, 810 (8th Cir. 2012)

"Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Indep., Mo.*, 829 F.3d 695, 699-700 (8th Cir. 2016) (citations omitted).  "A policy is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Id.*  Where a decision maker possesses final authority to establish municipal policy with respect to an employment action,

---

[5]      The Court previously recognized—and in their supplemental briefs addressed to the amended complaint, MSD and the Trustees do not dispute—that ALL has plausibly stated a claim that its removal from the Small Contractor Program constituted retaliation in violation of the First Amendment.

municipal liability under § 1983 may be imposed for a single decision. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).

A subordinate who lacks policymaking authority may bind the municipality only if a municipal policymaker delegated power to the subordinate or ratified the subordinate's decision. *Id.* at 127. Moreover, "[r]atification requires both knowledge of the alleged constitutional violation, and proof that the policymaker specifically approved of the subordinate's act." *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017).

Upon review of the amended complaint, the Court concludes that, at this stage, ALL has sufficiently alleged that the individual Trustees' were personally involved in removing ALL from the Small Contractor Program and that the Trustees' actions are chargeable to MSD.

ALL alleges that the Trustees ignored ALL's complaints that MSD staff had begun citing ALL for deficient work without providing any evidence, and that the Trustees were notified or consulted regarding ALL's removal from the Small Contractor Program and tacitly approved or ratified that action. MSD and the Trustees admit that the Trustees had final policymaking authority for MSD. Although these Defendants contend that lower-level staff, such as the Executive Director, had discretion with respect to certain administrative matters, it is not clear to the Court at this stage that the Trustees lacked authority to stop or prevent ALL's removal from the Small Contractor Program.

MSD's Charter, which Defendants have attached to their supplemental briefs,[6] provides that the Board of Trustees shall appoint an Executive Director who shall be the "chief executive and administrative officer" of MSD and whose responsibilities include "see[ing] that all contracts are faithfully performed." ECF No. 42-1 at § 6.010. However, the Charter also provides that the Executive Director is ultimately "responsible to the Board [of Trustees] for the proper administration of all affairs" of MSD. *Id.*

Generally, a final policymaker's "mere acquiescence in a single discretionary decision by a subordinate" is insufficient to establish either the delegation or ratification theory of municipal liability. *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993) (citing *Prapotnik*, 485 U.S. at 127). However, based on the pleadings alone, it is not clear that the Trustees' actions with respect to ALL's removal from the Small Contractor Program amounted to mere acquiescence in the staff's decision. The limited record at this stage reveals little about the exact nature of the Small Contractor Program or the decision to remove ALL from it. But considering the pleadings and MSD's Charter alone, it is plausible that, even if lower-level staff enjoyed some discretion with respect to matters involving contractors, the Trustees retained final policymaking authority in this area of governance.[7] And in light of the sequence of events alleged here, including ALL's complaints to the Trustees that it was being unfairly singled out and

---

[6]     The Court takes judicial notice of the charter. *See Weed v. Jenkins*, 873 F.3d 1023, 1028 (8th Cir. 2017) (recognizing that a court may take judicial notice of local ordinances and city charters).

[7]     If the Trustees delegated final policymaking authority in this area to a subordinate, the subordinate's actions would still be chargeable to MSD. *See Prapotnik*, 485 U.S. at 127.

ALL's subsequent removal from the program, it is plausible that the Trustees had notice and approved of both the decision to remove ALL from the program and the basis for it.

Whether ALL's allegations in this regard are supported by evidence may be determined at a later stage, such as summary judgment. *See, e.g.*, *Soltesz*, 847 F.3d at 947 (noting that, generally, "[t]he issue of whether a final policymaker ratified a subordinate's decision is a question of fact for the jury to decide"); *Hulbert v. Wilhelm*, 120 F.3d 648, 656 (7th Cir. 1997) (holding that a county could be held liable under § 1983 for First Amendment retaliation where the final policymaker, the county board, adopted the recommendations of a personnel committee to take adverse action against the employee after his protected speech); *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994) (holding that a school district could be liable for the retaliatory firing of teacher where the final policymaker, the school board, "was fully apprised of all of the superintendent's retaliatory actions and condoned each of them").

ALL also adequately alleges the Trustees' retaliatory motive, which at this stage, can be plausibly inferred from the temporal proximity of ALL's removal from the Small Contractor Program to ALL's protected speech, and from the Trustees' expressions of opposition to ALL as a subcontractor on particular projects, such as the Deer Creek Project. *See, e.g.*, *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 655, 657 (8th Cir. 2007) "[T]emporal proximity between protected activity and an adverse employment action can contribute to establishing the third element of a prima facie case of retaliation," which is that the "protected conduct was a substantial or motivating factor in the defendant's decision to take the adverse employment action.").

Therefore, the Court will deny the motions to dismiss ALL's First Amendment retaliation claim based on ALL's removal from the Small Contractor Program.

### b. Violation of § 1981

"Under 42 U.S.C. § 1981, all persons within the jurisdiction of the United States shall have the same right to make and enforce contracts as is enjoyed by white citizens." *Combs v. The Cordish Cos*., 862 F.3d 671, 680 (8th Cir. 2017) (quoting 42 U.S.C. § 1981(a)). "Although § 1981 permits a cause of action against private actors, where . . . a plaintiff brings a claim pursuant to § 1981 against an individual who was acting under color of law, the claim must be asserted through § 1983." *Jones v. McNeese*, 746 F.3d 887, 896 (8th Cir. 2014). "A plaintiff establishes a prima facie case under § 1981 by showing (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts)." *Harris v. Hays*, 452 F.3d 714, 718 (8th Cir. 2006).

In their supplemental briefs, MSD and the Trustees argue, first, that ALL has again failed to plead that these Defendants were personally involved in the alleged violation of § 1981. Second, MSD and the Trustees contend that ALL has failed to plead facts from which it could be plausibly inferred that these Defendants intended to discriminate against ALL based on the race of ALL's owner.

Because the Court agrees with the second point, it need not reach the first. Assuming, without deciding, that ALL could satisfy the other elements of a claim for violation of § 1981, ALL has pled no facts from which it could be plausibly inferred that

the Trustees or MSD intended to discriminate against ALL based on its owner's race. Rather, ALL alleges that, at worst, the Trustees knew about Bates's failure to adhere to MSD's self-imposed MBE program requirements and tacitly condoned Bates's actions by approving Bates's change orders which listed ALL as an MBE. But this allegation, alone, does not give rise to a plausible inference of race discrimination because there is no indication that the Trustees' actions were motivated by Lumpkin's race. Therefore, the Court will grant the Trustees and MSD's motions to dismiss ALL's claims against them for violation of § 1981.

However, the Court reaches a different conclusion with respect to Bates. Bates, like the Trustees and MSD, argues that ALL has failed to plead sufficient facts to indicate that Bates intended to discriminate against ALL based on its owner's race. As Bates argues, § 1981 does "far more to undermine set-aside programs [like MSD's MBE program] than to provide means to enforce them in federal court," because "it is to victims of discrimination rather than frustrated beneficiaries that § 1981 assigns the right to litigate." *Rapid Test Prod., Inc. v. Durham Sch. Servs., Inc.*, 460 F.3d 859, 860 (7th Cir. 2006). Nevertheless, § 1981 prohibits contractors from engaging in race discrimination in refusing to award a subcontract to a particular minority subcontractor, even if a set-aside program is the only reason why the contractor was in the market for subcontractors. *Id.* at 860.

Here, ALL plausibly alleges that Bates's decision to exclude ALL from work under certain subcontracts was the result of race discrimination. In particular, as noted above, ALL alleges that Bates's agents expressed hostility towards programs designed to

14

benefit African-Americans and that, upon information and belief, Bates either pocketed the money earmarked for ALL or paid that money to white subcontractors to complete the work. *See id.* (holding that a subcontractor would have a viable § 1981 claim if it could prove that a contractor's refusal to grant it a subcontract under a set-aside program for minority businesses was based on the subcontractor's owner's race as an African-American, "rather than a nondiscriminatory reasons such as an inability to perform the services," and remanding to the district court to evaluate such evidence). Therefore, the Court will deny Bates's motion to dismiss.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motions to dismiss the complaint filed by Defendants the Metropolitan St. Louis Sewer District, James Faul, Ruby Bonner, Rev. Ronald Bobo, Michael Yates, and James I. Singer, are **GRANTED in part and DENIED in part**, as set forth above. ECF Nos. 10 & 12.

**IT IS FURTHER ORDERED** that Defendant Bates Utility Co., Inc.'s motion to dismiss is **DENIED**. ECF No. 46.

**IT IS FURTHER ORDERED** that the parties shall confer and, no later than **April 19, 2018**, shall file a joint proposed scheduling plan for the remainder of the litigation, including deadlines for any motions with respect to qualified immunity.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 5th day of April, 2018.

15