IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.L.L. CONSTRUCTION, LLC, )<br><br>Plaintiff, )<br> )<br>v. )<br> )<br>THE METROPOLITAN ST. LOUIS )<br>SEWER DISTRICT, JAMES FAUL, RUBY )<br>BONNER, REV. RONALD BOBO, )<br>MICHAEL YATES, and JAMES I. SINGER, )<br>in their individual capacities as the Board of )<br>Trustees of the Metropolitan St. Louis Sewer )<br>District, )<br> )<br>Defendants. ) | Case No: 4:17-CV-02367-AGF<br><br>**JURY TRIAL DEMANDED** |

## STATEMENT OF UNCONTROVERTED MATERIAL FACTS IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS JAMES FAUL, RUBY BONNER, REV. RONALD BOBO, MICHAEL YATES, AND JAMES I. SINGER

COME NOW, Defendants James Faul, Ruby Bonner, Rev. Ronald Bobo, Michael Yates, and James I. Singer, by and through the undersigned counsel, and for their Statement of Uncontroverted Material Facts in Support of their Motion for Summary Judgment, state as follows:

### I.    Plaintiff's Claim.

1.    In this case Plaintiff A.L.L. Construction, L.L.C. (hereinafter "A.L.L.") has brought a First Amendment retaliation claim against Defendant the Metropolitan St. Louis Sewer District (hereinafter "the District") and certain members of the District's Board of Trustees, Defendants James Faul, Ruby Bonner, Rev. Ronald Bobo, Michael Yates, and James I. Singer (hereinafter collectively referred to as "the Trustees").  Plaintiff's First Amended Complaint attached hereto as Exhibit M generally.

2.      A.L.L. alleges that it suffered retaliation at the hands of the District and the Trustees following an April 14, 2016 meeting of the District's Board of Trustees wherein Anton Lumpkins (hereinafter "Lumpkins"), the owner of A.L.L., complained to the Board of Trustees that Bates Utility Co., Inc. (hereinafter "Bates") had been denying A.L.L. the opportunity to perform work on Bates's contracts with the District for improvements to the District's sewer system. Exhibit M at ¶¶ 34-35 and 85.

3.      Specifically, A.L.L. alleges that, on April 14, 2016, Lumpkins stated to the Board of Trustees that Bates had listed A.L.L. as a minority subcontractor in contracts that the District had awarded to Bates and that Bates was not allowing A.L.L. an opportunity to perform the work that was assigned to it in Bates's contract or bid documents submitted to the District in violation of certain policies of the District concerning the use of Minority Business Enterprises (hereinafter "MBE"). Exhibit M at ¶¶ 34-35 and 85.

4.      The First Amended Complaint goes on to allege that either the Trustees or the District then engaged in retaliation against A.L.L. following that April 14, 2016 Board Meeting. Exhibit M at ¶¶ 34-35 and 85.

5.      Following this Court's April 5, 2018 Memorandum and Order ruling on the Motions to Dismiss of the District and the Trustees, the only act of alleged retaliation now at issue is A.L.L.'s removal from a list for a program at the District known as the Small Contractor Program. *See* Memorandum and Order of April 5, 2018, Dkt. No. 54.

**II.      The Small Contractor Program.**

6.      The Small Contractor Program was at all times relevant hereto limited to infrastructure repair contracts that involved amounts less than $25,000. See Affidavit of Michael Buechter attached hereto as Exhibit G at ¶ 5.

2

7.     When a project is identified that can be performed through the Small Contractor Program, the District sends a request for bid to four contractors selected from the approved list. Exhibit G at ¶¶ 6 and 7.

8.     The work is then generally awarded to the lowest responding bidder. Exhibit G at ¶ 8.

9.     These smaller contractors are not subject to the Board of Trustees' approval under Section 9.030 of the District's Charter, but, rather, are authorized by ordinance of the District, at the time, Ordinance No. 13537 of the District. Affidavit of Richard Unverferth attached hereto as Exhibit J at ¶ 9; Exhibit G at ¶ 13; Affidavit of Brad Nevois attached hereto as Exhibit I at ¶ 9.

**III.    Small Contractor Program Administered by the Staff of the District.**

10.     The Small Contractor Program is administered by the staff of the District's Engineering department. See generally Exhibits J, G, and I; Affidavit of Steven Valli attached hereto as Exhibit H generally.

11.     The staff of the District was entirely responsible for administering the Small Contractor Program. Affidavit of James Singer attached hereto as Exhibit B at ¶ 9; Affidavit of Michael Yates attached hereto as Exhibit C at ¶ 9; Affidavit of James Faul attached hereto as Exhibit D at ¶ 9; Affidavit of Ruby Bonner attached hereto as Exhibit E at ¶ 9; and Affidavit of Rev. Ronald Bobo attached hereto as Exhibit F at ¶ 9.

12.     Michael Buechter is responsible for approving contractors that wish to be included in the Small Contractor Program. Exhibit G at ¶ 9.

13.     Michael Buechter is also responsible for overseeing the work the contractors in the Small Contractor Program perform. Exhibit G at ¶ 10.

**IV.** **Trustees do not have a Role in the Administration of the Small Contractor Program.**

14.     Although the Board of Trustees has the power to set policy for the District when the Board votes as the Board of Trustees, the individual Trustees do not manage the operations of the District, the Board has largely delegated responsibility for all day-to-day operations of the District to the Executive Director.  Exhibits B through F, each at ¶ 5.

15.     Due to the small size of the contracts in the Small Contractor Program, Board action was not required with respect to the administration of the Small Contractor Program or the administration of the individual contracts for work performed through the Small Contractor Program. Exhibits B through F at ¶ 8; Exhibit G at ¶ 12.

16.     Due to the applicable procurement process, the Board of Trustees does not have authority to approve or disapprove of the contracts formed under the Small Contractor Program. Exhibit J at ¶¶ 10-11; Exhibit G at ¶ 14; and Exhibit at ¶ 10.

17.     The Trustees, as individuals and as a group, have no role in the administration of the Small Contractor Program or in making the determination as to whether a contractor is approved to be part of the Small Contractor Program. Exhibit J at ¶ 11; Exhibits B through F at ¶¶ 10-11; Exhibit G at ¶ 15; and Exhibit I at ¶ 11.

18.     The Trustees, as individuals and as a group, have no role, and have never had a role, in determining what contractors are removed or suspended from the Small Contractor Program. Exhibits B through F, all at ¶ 12.

19.     None of the Trustees have ever recommended or requested the use of a particular contractor in the Small Contractor Program. Exhibits B through F, all at ¶ 13.

20.     None of the Trustees have ever recommended or requested the removal or suspension of any contractor from the Small Contractor Program. Exhibits B through F, all at ¶ 14.

**V.     Requirements for Work in Small Contractor Program.**

21.     The minimum requirements for a contractor's participation in the Small Contractor Program are set out in the one-page document titled "Small Repair Project Requirements." Exhibit H at ¶ 6; Exhibit G at ¶ 16; and Exhibit I at ¶ 12.

22.     A copy of the Small Repair Project Requirements document is provided to the contractors who are awarded contracts under the Small Contractor Program. Exhibit H at ¶ 8; Exhibit G at ¶ 18; and Exhibit I at ¶ 14.

23.     A copy of the Small Repair Project Requirements document is attached hereto as Exhibit R. Exhibit H at ¶ 6; and Exhibit I at ¶ 12.

24.     In addition, the Small Repair Project Requirements specifically require a contractor in the Small Contractor Program to follow the District's "Standard Construction Specifications for Sewers and Drainage Facilities." Exhibit H at ¶ 19; Exhibit G at ¶ 36; and Exhibit I at ¶ 27.

25.     A copy of the Standard Construction Specification for Sewers and Drainage Facilities is attached hereto as Exhibit N. Exhibit H at ¶ 19; Exhibit G at ¶ 36; and Exhibit I at ¶ 27.

26.     Furthermore, contractors who perform work in the small contractor program are expected to follow industry standards and perform the work specified in the contracts that they are ultimately awarded. Exhibit H at ¶ 7; Exhibit G at ¶ 17; and Exhibit I at ¶ 13.

**VI.    A.L.L.'s Involvement in the Small Contractor Program.**

5

27.     In 2012, A.L.L. began having some trouble with its work in the Small Contractor Program. Exhibit I at ¶¶ 16-18.

28.     The issues culminated with A.L.L.'s inability to renew its insurance, causing A.L.L. to be ineligible for work in the Small Contractor Program. Exhibit G at ¶ 20.

29.     In 2015, A.L.L. was readmitted to the Small Contractor Program with warnings related to the prior poor performance in the Small Contractor Program. Exhibit G at ¶ 21.

30.     After readmission to the Small Contractor Program, A.L.L. failed to respond to seven of the District's requests for bid directed to A.L.L. Exhibit G at ¶ 22.

31.     In November of 2015, A.L.L. was awarded a contract to raise a manhole to grade at 722 Summer Top Circle in St. Louis County. Exhibit H at ¶ 9; Exhibit G at ¶ 24; and Exhibit I at ¶ 19.

32.     On or about May 27, 2016, members of the District's engineering staff became aware that the 722 Summer Top Circle project was generating ongoing complaints and issues of property damage from the property owner, who claimed to have had his sprinkler system and invisible fence damaged, along with an inadequate replacement of a concrete pad on his property near a deck. Exhibit H at ¶ 10; Exhibit G at ¶ 28; and Exhibit I at ¶ 20.

33.     Steven Valli, the Resident Inspector in the Engineering department, was required to address these complaints through June of 2016. Exhibit H at ¶ 11.

34.     In February of 2016, A.L.L. was awarded another project at 1226 Dunloe Road in St. Louis County to replace an existing manhole. Exhibit H at ¶ 12; Exhibit G at ¶ 26; and Exhibit I at ¶ 21.

35.     Steven Valli, the Resident Inspector, received a report from one of his project inspectors that he supervises that on March 28, 2016, the inspector had been called to the 1226 Dunloe Road Project by A.L.L. to perform his initial inspection. Exhibit H at ¶ 13.

36.     At the time of the initial inspection in March of 2016, the work was largely completed, which is a significant problem because it makes it impossible to inspect. Exhibit H at ¶ 14; and Exhibit G at ¶ 28.

37.     Moreover, at the beginning of each contract made in the Small Contractor Program, the contractor is asked to notify one of the District's inspectors when work is to commence. Exhibit H at ¶ 15; and Exhibit G at ¶ 29.

38.     The fact that the work was mostly completed before an inspector for the District had been notified meant that A.L.L. had failed to comply with this initial requirement. Exhibit H at ¶ 16; Exhibit G at ¶ 30; and Exhibit I at ¶ 23.

39.     Around this time, A.L.L. submitted an invoice dated March 30, 2016 for the 1226 Dunloe project in an amount in excess of the amount of the bid without having properly requested a change order. Exhibit G at ¶¶ 31-34; Exhibit I at ¶ 24-26; Notice of Award attached hereto as Exhibit P; and March 30, 2016 Invoice attached hereto as Exhibit O.

40.     Although the work was almost complete when Steven Valli's inspector reported that he was first notified by A.L.L. of the work, Steven Valli and the Small Contractor Program group made arrangements to perform an inspection by examining portions of the work and videoing certain portions of the main that were otherwise inaccessible. Exhibit H at ¶ 17; and Exhibit G at ¶ 34.

41.     On April 14, 2016, Steven Valli visited the property to confirm the earlier reports from other inspectors. Exhibit H at ¶ 18.

42.     At that point, it was apparent that A.L.L.'s replacement manhole was defective in a number of respects, under the Standard Construction Specifications of the District and the requirements of the contract, including, but not limited to:

    a.  The fact that the manhole was meant to be a drop manhole, but the manhole that A.L.L. had installed did not have a drop as set forth in the contract documents attached hereto as Exhibit Q;

    b.  Seven feet of pipe needed to be replaced because it had not been laid in compliance with Part 4, Section D, Paragraphs 1, 2, and 3 of the Standard Construction Specifications; and,

    c.  The invert at the bottom of the manhole was not appropriately constructed as required in Part 4, Section G, Paragraph 3 of the Standard Construction Specifications.

Exhibit G at ¶¶ 36-37; Exhibit H at ¶¶ 19-20; Exhibit I at ¶¶ 27-28; and the District's Standard Construction Specifications for Sewers and Drainage Facilities attached hereto as Exhibit N.

43.     Thereafter, the District's Engineering staff determined that the entire manhole at 1226 Dunloe Road required replacement.  Exhibit H at ¶ 21; Exhibit G at ¶ 38; Exhibit I at ¶ 29.

44.     On April 19, 2016, Steven Valli, the Resident Inspector, Michael Buechter, the Program Manager, Shonnah Paredes, the Manager of Diversity Programs, Rich Unverferth, the District's Director of Engineering, and Brad Nevois, an Assistant Director of Engineering met to discuss a possible resolution of the issues with the 1226 Dunloe Road Project. Exhibit H at ¶ 22; Exhibit G at ¶ 39; Exhibit I at ¶ 30; and Exhibit J at 17.

45.     The group determined that A.L.L. would be given an opportunity to replace the manhole by May 13, 2016 or be removed from the Small Contractor Program. Exhibit H at ¶ 23; Exhibit G at ¶ 40; Exhibit I at ¶ 31; and Exhibit J at ¶ 18.

46.     Steven Valli and Michael Buechter called Anton Lumpkins, the head of A.L.L. and attempted to discuss the District's proposal regarding the 1226 Dunloe Road project, but the call could not be completed.  Exhibit H at ¶ 24; and Exhibit G at ¶ 41.

47.     Michael Buechter followed up the phone call with an e-mail of April 19, 2016 to Mr. Lumpkins which is attached hereto as Exhibit G-F.  Exhibit G at ¶ 42.

48.     After April 19, 2016, Michael Buechter and Brad Nevois also became aware of complaints from the homeowner at 1226 Dunloe Road about mud from the project.  Exhibit G at ¶ 43; and Exhibit I at ¶ 32.

49.     A.L.L. attempted to replace the manhole but failed to complete the work by May 13, 2016 as the District staff had required on April 19, 2016.  Exhibit H at ¶ 25; Exhibit G at ¶ 44; and Exhibit I at ¶ 33.

## VII.    A.L.L.'s Removal from the Small Contractor Program.

50.     On May 31, 2016, Steven Valli, Michael Buechter, and Shonnah Paredes participated in a meeting with Mr. Lumpkins in which Mr. Lumpkins was informed that A.L.L. was being removed from the Small Contractor Program due to the history of poor performance detailed above and his final failure to correct the serious deficiencies in the 1226 Dunloe Road project.  Exhibit H at ¶ 26; and Exhibit G at ¶ 45.

51.     Subsequent to May 31, 2016, Steven Valli, Michael Buechter, Rich Unverferth, and Brad Nevois participated in the process of drafting formal correspondence to A.L.L. outlining the decision to remove A.L.L. from the Small Contractor Program and the basis for that

decision, which resulted in the June 10, 2016 correspondence attached hereto as Exhibit S. Exhibit H at ¶ 27; Exhibit G at ¶ 46; Exhibit I at ¶ 35; and Exhibit J at 23.

52.     Although the correspondence was dated June 10, 2016, the process of drafting the correspondence began on June 3, 2016 to formally document the decision that had been made to remove A.L.L. from the Small Contractor Program. Exhibit H at ¶ 28; Exhibit G at ¶ 47; Exhibit ¶ 47; and Exhibit J at 24.

53.     As part of the final decision to remove A.L.L. from the Small Contractor Program, A.L.L. was allowed to attempt to become readmitted to the Small Contractor Program after a period of a year.  Exhibit H at ¶ 29; and Exhibit G at ¶ 48.

54.     Although other staff at the District were notified of the decision to remove A.L.L. from the Small Contractor Program, the decision to remove A.L.L. was the responsibility of the staff of the Engineering Department of the District.  Exhibit H at ¶ 30; Exhibit G at ¶ 49; Exhibit I at ¶ 38; and Exhibit J at ¶ 27.

55.     The staff of the Engineering Department participating in the decision to remove A.L.L. from the Small Contractor Program were Steven Valli, Michael Buechter, Brad Nevois, and Rich Unverferth, and they all agreed in the decision.  Exhibit H at ¶¶ 31-32; Exhibit G at ¶¶ 50-51; Exhibit I at ¶¶ 39-40; and Exhibit J at ¶¶ 28-29.

56.     No member of the Board of Trustees participated in the process of the decision to remove A.L.L. from the Small Contractor Program.  Exhibit H at ¶ 33; Exhibit G at ¶ 52; Exhibit I at ¶ 41; and Exhibit J at ¶ 30.

57.     No member of the Board of Trustees would have had any managerial authority over the process of removing a contractor from the Small Contractor Program. Exhibit H at ¶ 34; Exhibit G at ¶ 53; Exhibit I at ¶ 42; and Exhibit J at ¶ 31.

58.     The decision to remove A.L.L. from the Small Contractor Program was based on the pattern of poor performance A.L.L had demonstrated and failure to comply with the basic elements of the Small Repair Project Requirements and contract requirements for the 1226 Dunloe Road project. Exhibit H at ¶ 35; Exhibit G at ¶ 54; Exhibit I at ¶ 43; and Exhibit J at ¶ 32.

59.     If any other contractor had exhibited such poor performance under the Small Contractor Program, that contractor would have been removed as well.   Exhibit H at ¶ 36; Exhibit G at ¶ 55; Exhibit I at ¶ 44; and Exhibit J at ¶ 33.

60.     Although no member of the Board of Trustees of the District ever commented on the removal of A.L.L. from the Small Contractor Program, the Engineering Department of the District would have had to remove A.L.L. from the Small Contractor Program regardless of the Trustee's opinions on the matter. Exhibit H at ¶ 37; Exhibit G at ¶ 56; Exhibit I at ¶ 45; and Exhibit J at ¶ 34.

61.     The Trustees were made aware of the decision of the District's staff to remove A.L.L. Construction, L.L.C. from the Small Contractor program on June 3, 2016 by way of an e-mail from Brian Hoelscher, the District's Executive Director. Exhibits B through F, all at ¶ 16.

62.     It was in this e-mail that the Trustees were provided with the basis for the decision of the staff to remove A.L.L. from the Small Contractor Program. *See* June 3, 2016 E-Mail attached hereto as Exhibit A.

63.     The Trustees' input regarding the decision to remove A.L.L. from the Small Contractor Program was not solicited by the staff of the District.   Exhibit B at ¶ 18; Exhibit C at ¶ 19; Exhibit D at ¶ 19;Exhibit E at ¶ 17; and Exhibit F at ¶ 19.

64.     It also would not have been part of the Trustees' role as an individual Trustee to approve or disapprove of the decision of the staff to remove a contractor from the District's Small Contractor Program. Exhibit B at ¶¶ 19; Exhibit C at ¶ 19; Exhibit D at ¶ 19; Exhibit E at ¶¶ 10-14, 17; and Exhibit F at ¶ 19.

65.     Consequently, no Trustee took any action to approve of, disapprove of, and/or comment on the decision of the staff to remove A.L.L. from the Small Contractor Program as set out in the June 3, 2016 e-mail. Exhibit B at ¶¶ 20-21; Exhibit C at ¶ 19; Exhibit D at ¶ 19; Exhibit E at ¶¶ 10-14, 17; and Exhibit F at ¶ 19..

66.     The basis for the decision to remove A.L.L. from the Small Contractor Program set forth in the June 3, 2016 e-mail was entirely unrelated to any comments that Lumpkins had made at the April 14, 2016 Board of Trustees Meeting.  Exhibit A.

67.     The basis for the decision to remove A.L.L. from the Small Contractor Program set forth in the June 3, 2016 e-mail was entirely unrelated to any dispute between Bates and A.L.L.  Exhibit A.

68.     Rather, the basis for the decision to remove A.L.L. from the Small Contractor Program related only to the historical performance of A.L.L. in the Small Contractor Program and more recent problems where A.L.L.'s work had serious deficiencies to comply with the basic requirements of the Small Contractor Program.  Exhibit A.

69.     Based on the information the Engineering staff gathered and that was provided to the Trustees, the Trustees would not have had any reason to believe that the Engineering staff had any retaliatory motive with respect to A.L.L. in coming to the decision to remove A.L.L. the Small Contractor Program.  Exhibit A.

12

70.     At the June 9, 2016 Board of Trustees meeting for the District, Lumpkins used the public comment period to complain that A.L.L.'s removal from the Small Contractor Program was retaliation for his April 14, 2016 comments. See Exhibits U and V attached hereto.

71.     In those remarks, Lumpkins acknowledged that the decision to remove A.L.L. from the Small Contractor Program had already occurred as would have been the case because the Engineering staff met with Lumpkins on May 31, 2016 to inform him of the decision to remove A.L.L. from the Small Contractor Program. Exhibit U; and Exhibit V.

72.     Attached hereto as Exhibit K is a true and accurate copy of Ordinance No. 13537, the procurement Ordinance of the District in effect at relevant times to this dispute.

73.     Attached hereto as Exhibit L is a true and accurate copy of the Charter of the District.

WHEREFORE, Defendants James Faul, Ruby Bonner, Rev. Ronald Bobo, Michael Yates, and James I. Singer pray that this Court grants their Motion for Summary Judgment, and enters its Judgment in favor of Defendants James Faul, Ruby Bonner, Rev. Ronald Bobo, Michael Yates, and James I. Singer and against Plaintiff A.L.L. Construction, L.L.C., and for such other and further relief this Court deems necessary and proper under the circumstances.

RYNEARSON, SUESS, SCHNURBUSCH & CHAMPION, LLC.

BY:  /s/ Victor H. Essen, II
     Debbie S. Champion,      #38637
     Victor H. Essen, II      #57629
     500 North Broadway, Suite 1550
     St. Louis, MO 63102
     314-421-4430 / FAX: 314-421-4431
     dchampion@rssclaw.com
     vessen@rssclaw.com
     *Attorneys for Defendants*

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true copy of the foregoing was sent via the Court's electronic filing system on this 11th day of May 2018 to:

C. John Pleban
Lynette M. Petruska
Steven R. Kratky
PLEBAN & PETRUSKA LAW, LLC
2010 S. Big Bend Blvd.
St. Louis, MO 63117
314-645-6666 / FAX: 314-645-7376
cpleban@plebanlaw.com
lpetruska@plebanlaw.com
sktratky@plebanlaw.com
*Attorneys for Plaintiff*

Kevin F. Hormuth
Ronnie L. White, II
Audrie R. Howard
GREENSFELDER, HEMKER & GALE, P.C.
10 South Broadway, Suite 2000
St. Louis, MO 63102
314-241-9090 / FAX: 314-241-3643
kfh@greensfelder.com
rwhite@greensfelder.com
ahoward@greensfelder.com
*Attorneys for Defendant Bates Utility Company*

/s/ Victor H. Essen, II