IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| A.L.L. CONSTRUCTION, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) Case No: 4:17-CV-02367-AGF <br> v. ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> THE METROPOLITAN ST. LOUIS ) <br> SEWER DISTRICT, JAMES FAUL, RUBY ) <br> BONNER, REV. RONALD BOBO, ) <br> MICHAEL YATES, and JAMES I. SINGER, ) <br> in their individual capacities as the Board of ) <br> Trustees of the Metropolitan St. Louis Sewer ) <br> District, ) <br> ) <br> Defendants. ) | |

## AFFIDAVIT OF MICHAEL YATES

I, Michael Yates, of lawful age and being duly sworn upon my oath, state that the facts following are true to the best of my knowledge, information and belief:

1. I have personal knowledge of all matters set forth in this affidavit.

2. I was a member Trustee of the Board of Trustees (hereinafter "the Board") of the Metropolitan St. Louis Sewer District (hereinafter "the District") during the time period relevant to the occurrences referred to in the First Amended Complaint.

3. Individual Trustees of the District do not set policy for the District.

4. To the extent that the Trustees are responsible for setting the policy of the District, they set it when they act as members of the Board and vote to adopt an ordinance for the District.


EXHIBIT C

5. Although the Board has the power to set policy for the District when the Board votes, the Board has largely delegated responsibility for all day-to-day operations of the District to the Executive Director.

6. As a Trustee, I was aware of the existence of a program at the District known as the Small Contractor Program.

7. However, the Small Contractor Program was at all relevant times limited to infrastructure repair contracts that involved amounts less than $25,000.

8. Consequently, Board action was not required with respect to the administration of the Small Contractor Program or the administration of the individual contracts for work performed through the Small Contractor Program.

9. The staff of the District was entirely responsible for administering the Small Contractor Program.

10. I, as an individual Trustee, have no role, and never have had a role, in the administration of the Small Contractor Program.

11. I, as an individual Trustee, have no role, and never had a role, in determining what contractors are approved to be part of the Small Contractor Program.

12. I, as an individual Trustee, have no role, and never have had a role, in determining what contractors are removed or suspended from the Small Contractor Program.

13. I have never recommended or requested the use of a particular contractor in the Small Contractor Program.

14. I have never recommended or requested the removal or suspension of any contractor from the Small Contractor Program.

15. I am aware that A.L.L. Construction, L.L.C. (hereinafter "A.L.L.") was removed from the District's Small Contractor Program at the beginning of June 2016.

16. I was informed of the decision of the District's staff to remove A.L.L. Construction, L.L.C. on June 3, 2016 by way of an e-mail from Brian Hoelscher, the District's Executive Director.

17. An accurate copy of the said e-mail is attached hereto as Exhibit A.

18. In the said e-mail, I was provided the basis for the decision of the staff to remove A.L.L. from the Small Contractor Program.

19. My input regarding the decision to remove A.L.L. from the Small Contractor Program was not solicited from the staff of the District.

20. It also would not have been part of my role as an individual Trustee to approve, disapprove, and/or comment on the decision of the staff to remove a contractor from the District's Small Contractor Program.

21. Consequently, I took no action to approve of, disapprove of, and/or comment on the decision of the staff to remove A.L.L. from the Small Contractor Program as set out in the June 3, 2016 e-mail attached as Exhibit A to this Affidavit.

22. The reasons for the decision of the staff to remove A.L.L. from the Small Contractor Program set forth in the e-mail were, in my view, a reasonable basis for the staff to remove A.L.L. from the Small Contractor Program.

23. I had no reason to believe that any information that had been provided by the staff relative to the staff's decision to remove A.L.L. from the Small Contractor Program was inaccurate.

24.     I had no reason to believe that the staff had any motive to retaliate against A.L.L. for any improper reason in coming to the decision to remove A.L.L. from the Small Contractor Program.

25.     I had no reason to believe that the comments of Anton Lumpkins to the Board on April 14, 2016 in any way motivated the decision of the District's staff to remove A.L.L. from the Small Contractor Program.

26.     I had no reason to believe that the removal of A.L.L. from the Small Contractor Program would violate any of A.L.L.'s constitutional rights, and I did not and do not believe that A.L.L.'s removal from the Small Contractor Program violated A.L.L.'s constitutional rights.

Further affiant sayeth not.

_____
Michael Yates

SUBSCRIBED and sworn to before me, a Notary Public, this __7th__ day of __May__ 2018.

_____
Notary Public

My Commission Expires:

KELLY DEMATTEIS
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: December 15, 2019
Commission Number: 15637001

4

## Susan Myers

**From:** Brian Hoelscher
**Sent:** Friday, June 03, 2016 2:05 PM
**To:** Michael Yates (michael@iuoe148.com); jfaul@hghllc.net; Rev. Ronald L. Bobo Sr. (rlbobo454@aol.com); Reverend Lauren Hickman (lahickman@westsidembc.org); Annette Mandel; James I. Singer (jis@schuchatcw.com); 'Ruby L. Bonner'
**Cc:** Rich Unverferth; Marie Collins; Vicki Taylor Edwards; Shonnah Paredes; Susan Myers; Tamara Minley-Clinton
**Subject:** CONFIDENTIAL Status of A.L.L. Construction, Anton Lumpkins

Trustees, because Anton Lumpkins of A.L.L. spoke directly to the Board of Trustees at a public meeting, I wanted to keep you informed as to where we are with this company. At Anton's request, I met with him after he spoke to the Board of Trustees. I will keep the Board updated as this situation progresses.

### Small Sewer Program

A history of A.L.L.'s performance is outlined below if you are interested in reading the details. I am very familiar with this company as many of the issues occurred while I was the Director of Engineering. Because of the below, sanctions will again be taken against A.L.L. This will include suspension from the small sewer program for a year. A.L.L. will be reminded they have the right to re-apply before the year is up, but they will have to have resolved all issues on the existing projects to our satisfaction and will have to demonstrate what actions they have taken to correct their deficiencies. Anton has been told sanctions will be imposed and staff will be sending an official correspondence in the near future. Anton, as we have experienced in the past, claimed that this was some form of retaliation.

### Projects with Bates Utility Company

As you recall, Bates Utility Company has also been suspended for bidding for a year under the same conditions as described above. Bates Utility has become responsive in trying to resolve issues with A.L.L. However, A.L.L. has now become very non-responsive in trying to resolve the scope of involvement on 4 capital projects where A.L.L. is under contract to perform as a sub-contractor. It is possible that MSD may get to the point where we would allow Bates Utility the option of replacing A.L.L. with another African-American company in order to meet their contract commitments.

Again, I will keep the Board updated as this issue continues.

---

**From:** Rich Unverferth
**Sent:** Friday, June 03, 2016 10:43 AM
**To:** Brian Hoelscher
**Subject:** CONFIDENTAIL - A.L.L. - Proposed removal from MSD Small Contractor Repair Program

Brian,

Per our discussion, below is a timeline and events leading to the proposed removal of A.L.L. Construction from the program:

- It appears from records that ALL started work in the formal under $25 K program around 2009, although there were various less formal forms of the program prior to that time. I am certain he had performed work prior to this.



1

- In 2012 MSD had begun to see a pattern from them which included: not calling for inspections, submitting undocumented and unauthorized change orders and requests for payment, failure to start work on time requiring MSD to go to second bidders. During that time his work seemed to be OK.
- MSD met with him in late September 2012 and followed up with a letter over our concerns over the above items.
- In early 2013 a project (Aston Court) went bad on them which required MSD to hire other contractors to complete the work and compensate a homeowner for restoration work that ALL failed to complete.
- During that same project payments to ALL were being garnished by his vendors and by the Unions.
- During that same time we removed him from 3 projects which he had failed to start within 2 months.
- In June 24, 2014 ALL was removed from the bidders list for failure to renew his certificate of insurance.
- In August of 2014 ALL met with MSD to determine what was needed to return to the program, necessary administrative need and discussions on previous issues were discussed.
- In January 2015 ALL submitted necessary paperwork and was reinstated to the program
- 4/6/15 – Notice sent to ALL that they had failed to respond to at least 7 bid requests since being reinstated
- 6/5/2015 – Won first job since being reinstated
- In late 2015 began to see a similar pattern of behavior on some projects such as: attempted to connect a lateral to mainline suing corrugated black drain tile (unacceptable), inspector was able to catch the construction before it was covered up. Another project included invoice submitted for extra $1200 change order not agreed upon, was not paid.
- 11/2/15 – Won 6th Job 723 Summer Top Circle – A project similar to Aston court, ALL was dealing with poor soil conditions (for which he was compensated), but during construction the homeowner's sprinkler system and invisible dog fence were damaged, a concrete slab next to a stair was replaced numerous times due to poor workmanship. We are still receiving complaints from property owner for not being compensated for making repairs (approximately ($1800), the owner is still not satisfied with concrete stoop. Situation still unresolved as of 6-3-16.
- (2/18/16 – Awarded 10th Job Since Reinstatement – see timeline below which precipitated our suggested removal from the program:

**1226 Dunloe Timeline**
1. Job awarded on 2/17 (bid docs attached)
2. Wednesday, March 30, 2016 (email and pics attached)
    a. Email from Tom Newport with pics from Monday, March 28, at 12:00pm. This was the first time Tom had been called to the site, by Reggie Welsley from ALL.
    b. The pipe connecting to the manhole had been backfilled and so could not be inspected.
3. Wednesday, April 13, 2016
    a. At this point, MSD's concern was only that the job had not been inspected. We had no reason to believe it had been done incorrectly. We were only going to have ALL expose the connections to the manhole. There was also a house lateral in this area, and it was not clear how any of this had been done.
    b. Tom had Ops CCTV the main and manhole. It was discovered that no drop had been installed. The main was reconnected in some unknown fashion outside of the manhole.
4. Thursday, April 14, 2016 (pics attached)
    a. Steve V. met Tom on site. The manhole consisted of a poured concrete bottom and precast risers. Steve witnessed and confirmed that the MH had been installed incorrectly with no drop. Additionally, the invert was too small to allow for insertion of MSD crawler, and water was leaking up through the invert. It was decided that the invert could not be salvaged and the entire job would have to be redone.
5. Tuesday, April 19, 2016 (email attached)

2

   a. Meeting held in Rich's office around 1:15 PM with Shonnah Paredes, Steve Valli, Mike Buechter, Brad Nevois. Decided to give ALL chance to replace the manhole, or to pay them for the MH sections that would be reusable.
   b. Call placed to Anton Lumpkins directly after meeting by Mike and Steve to discuss this project. Call was ended before the conversation was finished.
   c. Mike sent an email to ALL outlining above options, including reconstructing the manhole entirely by May 13 if ALL is to be paid and remain on the small IR bidding list.
6. Monday, April 25, 2016
   a. Mike returns Anton Lumpkin's call and sends an email reiterating the requirements and May 13 date related to this project. At this point it had still not been started.
7. Tuesday, April 26, 2016
   a. Email from Paul Klages to Tom Newport from homeowner at 1226 Dunloe. Angry that mud washed from job site into her driveway.
8. Wednesday, April 27
   a. ALL cleans up mud from driveway
9. Tuesday, May 3
   a. Project to replace the MH begins.
10. Tuesday, May 31 (pics attached from 5/20 and 5/27)
    a. Meeting with ALL over job that is still not complete
11. A meeting was held with MR. Lumpkins on Tuesday May 31 notifying him that he was being removed from the program (see Draft follow up to discussion below. This has not been sent. The meeting did not go well.

**Summary**

34 total jobs awarded 8/10/10 – Present (off list from 6/13 - 1/15)

Total of 12 jobs awarded since reinstatement in January 2015

4 jobs have had serious issues

3 have had serious issues with the quality of work

Angry homeowners

Incomplete restoration

Incorrect installations that had to be redone (2 occasions)

1 was violation of the change order process which was clearly spelled out as a condition of re-entry to the program