## Certification of Document

I, Tim R. Snoke, being the duly qualified Secretary-Treasurer of

The Metropolitan St. Louis Sewer District, do hereby certify

that the attached is a true and correct copy of the Charter Plan

of The St. Louis Metropolitan Sewer District, as approved by

the voters at an election on February 9, 1954 and as amended

by the voters at an election on November 7, 2000 and as further

amended on June 5, 2012.

Witness my hand and seal of The Metropolitan St. Louis

Sewer District this 22nd day of February 22, 2018.

_____
**Secretary-Treasurer**



# CHARTER
# (PLAN)

## OF

## THE METROPOLITAN ST. LOUIS
## SEWER DISTRICT



Prepared by

THE ST. LOUIS AND ST. LOUIS COUNTY
BOARD OF FREEHOLDERS

Approved by the Voters
of St. Louis and St. Louis County

At a
SPECIAL ELECTION

on
TUESDAY, FEBRUARY 9, 1954

and amended on
TUESDAY, NOVEMBER 7, 2000

and as further amended on
TUESDAY, JUNE 5, 2012

THE ST. LOUIS AND ST. LOUIS COUNTY
BOARD OF FREEHOLDERS

The following are the Members of the Board of Freeholders appointed to prepare a Plan for a Metropolitan St.
Louis Sewer District:

J. Eugene Auchly, Chairman
John R. Shepley, Vice Chairman
Mrs. Jules Kopp, Secretary
Mack A. Aldrich
John C. Casey
Horace B. Deal
Alfred J. Dill
Don A. Fischer
Harold Garner
Charles N. Gilles
Robert M. Guion
Walter C. Haeussler
Dr. Henry E. Hampton
Theodore A. Kienstra
William R. Lake
Mrs. Chapin S. Newhard
William A. O'Connell
Rudolph W. Stuckenberg
Lloyd C. Weber

Legal Counsel                              Research Consultant
R. E. Blake                                Dr. Victor D. Brannon
Attorney                                   Director, Governmental
                                           Research Institute

# PROPOSED PLAN

## OF THE

## METROPOLITAN ST. LOUIS SEWER DISTRICT

### Table of Contents

                                                                            Page

To the People of St. Louis and St. Louis County ......................................................(i)

Message Relating to Amendments Year 2000 ........................................................(iv)

Message Relating to Amendments Year 2012 ..........................................................(v)

| ARTICLE 1 | Incorporation and Government | 1 |
| ARTICLE 2 | District Boundaries and Extensions | 2 |
| ARTICLE 3 | Powers of the District | 4 |
| ARTICLE 4 | Enforcement of District Ordinances | 11 |
| ARTICLE 5 | Board of Trustees | 12 |
| ARTICLE 6 | Executive Director | 15 |
| ARTICLE 7 | Finance and Taxation | 16 |
| ARTICLE 8 | Personnel Provisions | 29 |
| ARTICLE 9 | Improvements | 32 |
| ARTICLE 10 | Elections | 35 |
| ARTICLE 11 | Amending the Plan | 36 |
| ARTICLE 12 | Miscellaneous Provisions | 38 |

TO THE PEOPLE OF ST. LOUIS AND ST. LOUIS COUNTY

(Message from Freeholders at Time of Proposal)

This Proposed Plan for a Metropolitan Sewer District is presented in the sincere belief that its adoption will enable the people of St. Louis and St. Louis County to solve critical sewer problems in a sound and equitable manner.

Large areas in both the City and the County have sanitary and storm sewers which lack the capacity to handle the load. Some thickly populated areas in the County have no way of disposing of sanitary sewage except through ditches, creeks, and septic tanks.

The health hazards resulting from this situation are not confined to either City or County. They are area-wide in scope, because disease-communicating insects and microbes recognize no political boundaries of county, city, or village.

Dr. J. Earl Smith, Health Commissioner of the City of St. Louis, has summarized the health hazards to our entire metropolitan area from inadequate sewer facilities in these terms:

"We must remember that the transmitters of disease do not recognize the City limits line. Flies, mosquitoes, and other disease carriers may breed in the City or in the County and they may also contact disease organism either in the City or the County and then transmit to men and animals in either area."

"In summing up the disease potentials of improper disposal of sewage, experience has shown that inadequate sewerage presents a severe potential hazard of disease transmission; one which may come to us unexpectedly as an epidemic, as did the encephalitis epidemics which occurred here in 1933 and 1937."

"The problem has been shown to be one which cannot be solved within either City or County alone, but requires that it be treated as a whole. The City limits are but an imaginary line as far as disease and drainage are concerned."

Dr. Herbert H. Domke, St. Louis County Health Commissioner, in discussing this subject, recently stated: "The inadequate human sewage collection and disposal systems in St. Louis County constitute by far the greatest sanitation problem in the County. St. Louis County has many areas which contain health hazards due to improper sewage disposal as great as any in the United States. The condition as it exists today, with raw sewage and septic tank effluent in many places running openly in the streets, gutters, yards, streams, and ditches, makes for a definite potential health hazard to every resident and visitor to the County. While it is true that there is adequate sewage disposal in many localities in the County, the existence of the many problem areas is a danger to the entire County."

The reason our sewer problems cannot be handled by City or County separately, is simply that most of the industrial, commercial, and residential property in the County is on comparatively high ground and drains downhill through the City of St. Louis. Since the sewage water runs downhill, its

flow must be properly channeled and controlled by one overall authority from its source in the County through various municipalities and through the City of St. Louis to its eventual outlet in the Mississippi River. Health authorities, contractors, engineers, and the staffs of both the City and County law departments are in accord that the sewer problems should be handled on a watershed basis rather than according to arbitrary boundaries of county, city, village, or sewer district.

As property is built up, roofs, streets, sidewalks, and parking areas catch and speed into the sewers all the rainfall previously allowed to soak into the ground. Thus all new construction work puts additional burdens on the sewage and drainage facilities.

The construction of the so-called "Small Arms Plant" in North St. Louis is a typical example of the difficulties that can arise from such a change of use. Of the 271 acres of that land used by the Government, over 200 acres have been covered by buildings and paved areas during the last 12 years. Thus all rain falling on these buildings and parking areas is immediately diverted to one of St. Louis' largest sewers known as the Harlem-Baden Sewer, increasing its load. Engineers testified that

> "Construction of the relief facilities in the Harlem-Baden watersheds, especially in the low areas within the City of St. Louis, is one of extreme urgency, as flooding of property and sizable damages occur whenever the rainfall exceeds the capacities of the sewers. In these low areas, flooding of basements with damage to various types of electrical equipment, now in common use, is of relatively frequent occurrence."

Largely because of the need to correct conditions reported by medical authorities charged with the duty of studying and protecting public health in the City and the County, and because of the natural drainage of much of St. Louis County through City of St. Louis sewers, a Joint Interim Committee consisting of representative forward-looking citizens of both the City and County was appointed in 1951. This body held public hearings, studied the matter carefully, and recommended that the City of St. Louis and the County of St. Louis proceed with steps to provide an integrated sewer system.

In accordance with that report, petitions for the establishment of a bipartisan Board of Freeholders were signed by thousands of residents of the City and County. As a result, nine City residents were appointed by officials of St. Louis, nine County residents were appointed by authorities of St. Louis County, and a nineteenth member residing in outstate Missouri was appointed by the Governor. This Board of Freeholders held 27 open meetings and over 100 separate committee meetings and made personal inspections of sewage facilities in the City and County. The Board was aided in its study and research by its legal counsel, Mr. Robert E. Blake, and by its research consultant, Dr. Victor D. Brannon of the Governmental Research Institute.

In the course of their investigations and deliberations, the Freeholders studied local conditions and the needs of the City and the County. They found that piecemeal efforts to provide adequate sewers in the County have failed because municipalities and sewer districts individually cover less than a whole watershed and because in many cases they lack the financial resources to do the job. They also found that the industrial expansion of the entire St. Louis Area is being hampered by inadequate sewers, and that continued development of St. Louis County will make the sewer problem

even more critical to both City and County in the future unless a concerted area-wide program for its solution is adopted.

The Freeholders were told that, because of over flooded sewers, two youths were drowned several years ago in the vicinity of Union Avenue and Natural Bridge Road. They were advised that the area along Ashland Avenue, between Union Boulevard and Clara Avenue, is one of the most frequently flooded areas in the City. It has been estimated by City officials that the three floods which occurred in 1946 and 1947 caused property damage in this area of about $1,500,000. At least ten other areas within the City suffered severely from these same floods and the resulting damages amounted to about $9,000,000.

The Freeholders studied the metropolitan sewer districts now established in many localities, notably Louisville, Boston, Chicago, Hartford, and Newark, and found that in these localities sewer problems are successfully handled on an area-wide, watershed basis.

Taking all these matters into consideration, the Board of Freeholders drafted and recommends this Plan, which in its essence creates a single Metropolitan Sewer District consisting of the entire City of St. Louis and a large portion of St. Louis County, roughly extending to or beyond Lindbergh Rd since most of that part of the County drains through the City. In addition, the Coldwater Creek Watershed, consisting of land near Lambert Field now being so rapidly developed, is included in the District. Coldwater Creek must be freed from contamination since its waters flow into the Missouri River and thence into the Mississippi River above the City's Chain of Rocks Water Plant where the City gets much of its water supply. This one Metropolitan Sewer District is given necessary powers to build, operate, and maintain all sewer facilities within its area.

Your Board of Freeholders scheduled four City and four County public hearings on this proposed Plan, for the purpose of more fully advising the people of the City and the County of the health hazards now existing and the absolute geographical necessity of handling sanitary sewage and storm water problems on a "water runs downhill" basis.

At these public hearings, your Board of Freeholders explained the powers, duties, and responsibilities granted to the proposed Metropolitan Sewer District and the methods whereby such overall district can cope with many sewer problems and eliminate the health hazards now existing.

Many valuable suggestions were made by the people who attended the public hearings and by the civic organizations which studied the preliminary draft of the Plan. As a result of these suggestions, more than 50 changes and improvements were made in the Plan before it was finally approved by the Board of Freeholders.

(iii)

Message Relating to Amendments in Year 2000

For the most part, the message stated above, which was contained in the Plan approved by voters in February 1954, rings as true today as it did then. Still St. Louis City and County have changed, and the District must also adjust to those changes in order to continue protecting and safeguarding the citizens of the area and the waters flowing through and around it.

It is for this reason that the Metropolitan St. Louis Sewer District Board of Trustees has proposed amendments to the Plan of the District. These amendments will provide the District with the necessary tools to continue providing quality service and to address additional water quality and stormwater needs that exist or may develop in the years ahead.

The District has functioned well since its creation. Many of the wastewater problems alluded to in the 1954 Plan have been addressed. Yet there are new challenges due to changes in the law, a more diverse and larger population and enhanced technology.

Changes in existing law have probably impacted the District most. In 1972, the United States Congress substantially revised the Federal Water Pollution Control Act, the single most important water environmental legislation ever passed. The law requires the elimination of pollutants entering the nation's waterways except as authorized by a permit. This single law, along with subsequent amendments to it, greatly changed what agencies like the Metropolitan St. Louis Sewer District must do to enhance water quality. While the act previously provided for federal construction grants, it now provides loans under the State Revolving Loan Fund program to build required massive improvements to the sewer system. The Act establishes standards for the operation and effectiveness of the treatment of wastewater, which are typically contained in a permit. Permit compliance and the infrastructure costs necessary to achieve and demonstrate compliance have and continue to add to the cost of providing this service to the public.

The area covered by the District has more than doubled since the Plan's passage. A 1977 annexation election brought into the District's boundaries nearly all the remaining portions of St. Louis County. This area was experiencing the same problems that prompted voters in 1954 to approve the Plan of the District. Residents in the newly annexed area also wanted a coordinated, comprehensive approach to resolving these problems.

As the St. Louis region has continued to prosper and grow, drainage issues are now at the forefront. Additional emphasis has been placed on addressing stormwater runoff management in the area served by the District. The District must have the mechanisms available to address these concerns.

The Plan amendments proposed to voters will provide the District with more options in meeting its needs. These proposals will enhance the District's ability to provide the residents and businesses with quality service.

(iv)

Message Relating to Amendments in Year 2012

Although much has changed in St. Louis City and County since the Metropolitan St. Louis Sewer District (MSD) was formed in 1954 the previous messages relating to the Plan of 1954 and the amendments of 2000 are still indicative of MSD's purpose today. These changes are why MSD proposed amendments to the Plan of the District. The MSD Board of Trustees considered recommendations made by the Plan Amendment Commission and comprehensively reviewed the Plan and determined to enact amendments to the Plan to better effect and carry out the purposes for which the District was created.

The proposed amendments will allow MSD to modernize the plan while still focusing on its mission to protect the public's health, safety, and water environment by responsibly providing wastewater and stormwater management. These changes are needed to support the District in complying with the Clean Water Act and providing service to our customers.

After years of negotiations, MSD has a consent decree. This is a settlement of a lawsuit regarding overflows that was filed by the Environmental Protection Agency and the State of Missouri in 2007. The Missouri Coalition for the Environment later joined the suit as an intervener. The settlement was entered and went into effect on April 27, 2012.

The consent decree requires MSD to spend an estimated $4.7 billion in 2010 dollars over the duration of the settlement to address the issue of overflows and other sewer system improvements. Throughout MSD's service area, there are hundreds of points where a combination of rainwater and wastewater discharges into local waterways from the sewer system during moderate to heavy rainstorms. These sewer overflow points act as relief valves when too much rainwater enters the sewer system, and without them, our community could experience thousands of basement backups and/or extensive street flooding.

These Plan amendments proposed to the voters will allow MSD to move into the 21st century while still providing customers with quality service. These proposed Plan amendments include modernizing sections of the Plan that are outdated in regards to record keeping, procedural requirements, and language gender; describing the District's boundaries that are located within St. Louis County in records kept in the office of the Secretary Treasurer and not in the text of the Plan; streamlining the process for institution of improvements; and permitting the District to use design-build construction and other alternative delivery methods for improvements. These proposed amendments will enhance the District's ability to provide adequate sewer and drainage facilities within its boundaries.

CHARTER (PLAN)

OF

THE METROPOLITAN ST. LOUIS SEWER DISTRICT

ARTICLE 1

INCORPORATION AND GOVERNMENT

**SECTION 1.010.  Metropolitan sewer district established — Name — Body corporate. —** In the interest of the public health and for the purpose of providing adequate sewer and drainage facilities within the boundaries herein defined, or as extended in the manner herein provided, there is hereby established a metropolitan sewer district under the provisions of Section 30 of Article VI of the Constitution of Missouri. Said District shall be known by and under the name of "The Metropolitan St. Louis Sewer District." Said District, hereinafter referred to as "the District," shall be a body corporate, a municipal corporation, and a political subdivision of the state, with power to adopt, use, and alter at its pleasure a corporate seal, sue and be sued, contract and be contracted with, and in other ways to act as a public corporation within the purview of this Plan, and shall have the powers, duties, and functions as herein prescribed.

**SECTION 1.020. Powers of District vested in Board of Trustees — Executive Director to administer government. —** Pursuant to the provisions of this Plan and subject to the limitations imposed hereby and by the Constitution of Missouri, all powers of the District shall be vested in a Board of Trustees, hereinafter referred to as "the Board", which shall enact District ordinances, adopt budgets, determine policies, and appoint the Executive Director, who shall execute the ordinances and administer the government of the District and all subdistricts. The powers of the District shall be exercised in the manner prescribed in this Plan, or, if not prescribed herein, in such manner as may be prescribed by the Board.

ARTICLE 2

DISTRICT BOUNDARIES AND EXTENSIONS

**SECTION 2.010. Boundaries of the District.** — The boundaries of the District shall include all of the land situated within the City of St. Louis and that portion of the land situated within St. Louis County as described and on record in the office of the Secretary -Treasurer of the District.

 **SECTION 2.020. Extension of District boundaries.** — The boundaries of the District may be extended to include any area in St. Louis County which, in the judgment of the Board, could be efficiently served by the sewer or drainage facilities of the District. The procedure to effect any such extension shall be as follows: A petition praying for annexation and setting forth the boundaries of the area to be annexed, signed by owners of land in said area, shall be filed with the Board; and the term "owner" shall mean the holder of the legal title to a freehold interest in land, and for this purpose shall include mortgagors and grantors in deeds of trust to secure debts, but shall not include remaindermen, reversioners, or holders of equitable interests. If said petition is signed by a majority of the owners of land in said area, who are also the owners of more than one-half of the land area therein, and if the Board after examination and consideration of the facts, grants the petition for annexation of said area, the Board shall by ordinance set forth the relevant facts and declare that the corporate boundaries of the District are thereby extended so as to include said area, and certified copies of such ordinance shall be filed in the offices of the Recorder of Deeds of St. Louis County, the Recorder of Deeds of the City of St. Louis, and the Secretary of State.

If said petition for annexation is signed by one hundred or more owners of land in the area to be annexed, but such signers do not constitute a majority of owners of land in said area owning more than one-half of the land area therein, and if the Board grants the petition for annexation of said area, the Board shall direct the Board of Election Commissioners of St. Louis County to call and hold an election in said area upon the question of whether said area should be annexed to the District. Such election shall be held on a date fixed by the Board of the District. The ballots used in said election may be in the following form:

Page 2

OFFICIAL BALLOT

(Instructions to voters: To cast a vote in favor of the annexation of
area, place a cross (X) mark in the square opposite the word "Yes";
to cast a vote against annexation of area place a cross (X) mark in
the square opposite the word "No.")

For the annexation of the area:  Yes  ☐
No  ☐

The Board of Election Commissioners of St. Louis County shall certify the results of the
election to the Board of the District. If a majority of the votes cast on the proposition shall be
in favor of the annexation of said area, the Board of the District shall by ordinance set forth
the relevant facts and declare that the corporate boundaries of the District are thereby
extended so as to include said area, and certified copies of such ordinance shall be filed in the
offices of the Recorder of Deeds of St. Louis County, the Recorder of Deeds of the City of St.
Louis, and the Secretary of State. If a majority of the votes cast on the proposition shall be
against such annexation, then the Board of the District shall record the relevant facts and
declare that the proposal to extend the boundaries has failed and that the boundaries of the
District shall remain unchanged.

The Board of the District may prescribe conditions precedent to entertaining such petition for
annexation, including the condition that the District shall have free access to the area for the
purposes of making maps, profiles, drawings, or other data necessary to a consideration of the
petition and for apportionment of costs of construction and maintenance.

ARTICLE 3

POWERS OF THE DISTRICT

**SECTION 3.010. District to take over existing sewer facilities.** — Effective on July 1, 1954, and by virtue of the adoption of this Plan by vote of the people of the City of St. Louis and St. Louis County, the existing sanitary and storm water sewer systems and facilities of any and all municipalities, sewer districts, and other public agencies situated within the boundaries of the District, together with all contracts, rights, privileges, interests, easements, books, maps, plans, papers, and records, of whatever description pertaining to or relating to the design, construction, maintenance, operation, or affairs of such existing sanitary and storm water sewer systems and facilities, and title to the same, shall be transferred and dedicated to the use of and be in the possession and under the jurisdiction, control, and supervision of the District under this Plan created, and the District is empowered to take title thereto for its use and possession. The District hereunder created shall thereafter have complete title, jurisdiction, control, possession, and supervision of such existing sanitary and storm water sewer systems and of all facilities of such municipalities, sewer districts, and other public agencies for the collection and disposal of sanitary sewage and storm water. Provided, however, that the District shall not assume or agree to pay or be liable for any bonded indebtedness of any such municipality, sewer district, or other public agency. Provided, further, that any transfer of title to automobiles, trucks, or other movable equipment used for purposes of construction, maintenance, or operation of such existing sanitary and storm water sewer systems and facilities, title to land or buildings used exclusively for administering the affairs of such systems and facilities, or title to the furnishings and equipment in such buildings, shall be made by an agreement or agreements between the District and any such municipality, sewer district, or other public agency. Provided, further, that in order to assure continuity of operation and maintenance any such municipality, sewer district, or other public agency shall continue to maintain and operate its existing sanitary and storm water sewer systems and facilities until the Board shall by resolution set a date on which the District shall undertake the maintenance and operation of said systems and facilities, and on and after such date the District shall exclusively operate, maintain, and control said systems and facilities.

**SECTION 3.020. Powers of the District.** — The District established under the provisions of this Plan shall have power:

(1)   To have jurisdiction, control, possession, and supervision of such sewer and drainage systems and facilities as are placed under its jurisdiction by the provisions of this Plan, or may hereafter be placed under its jurisdiction in the manner herein provided; to maintain, operate, reconstruct, and improve the same as a comprehensive sewer and drainage system, and to make additions, betterments, and extensions thereto; to protect the public health and welfare by preventing or abating the pollution of water; and to have all the rights, privileges, and jurisdiction necessary or proper for carrying such powers into execution. No enumeration of powers in this Plan shall operate to restrict the meaning of this general grant of power or to exclude other powers comprehended within this general grant.

Page 4

(2) To prepare or cause to be prepared and to revise and adopt plans, designs, and estimates of costs, of a system or systems of outfall sewers, trunks, mains, submains, interceptors, lateral sewers, outlets for sewerage, storm water drains, pumping and ventilating stations, disposal and treatment plants and works, and any and all other structures, systems, works, and things which, in the judgment of the Board, will provide an effective and advantageous means for insuring the area within such District of adequate sanitary and storm water drainage and of adequate sanitary disposal and treatment of the sewage thereof, or such sections or parts of such system or systems as the Board may from time to time deem necessary or proper to construct, consistent with the purposes of this Plan, and to take any and all such steps as the Board may deem necessary and proper to effect the purposes hereof.

(3) To construct any additions, improvements, or extensions to the facilities of the District, by contract or contracts, or under, through, or by means of its own officers, agents, and employees, and to construct any such additions, improvements, or extensions across, through, over, or under any public highway, railroad, right-of-way, tract, grade, fill or cut, and any other right-of-way or easement in the District; and to remove any fence, building, or other improvement in the District where necessary or proper for the construction of such additions, improvements, or extensions.

(4) To establish, own, acquire, construct, lease, operate, and maintain, as a part of the sewer and drainage system or systems of the District, sewage treatment and disposal plants and systems and all the appurtenances and appliances thereunto belonging, and to sell any product or by-product manufactured in the course of sewage treatment.

(5) To own, acquire, and hold such personal property as the Board may deem necessary and proper for carrying out the corporate purposes of the District, and to dispose of personal property when the District has no further need therefor.

(6) To own, hold, control, and acquire by donation, purchase, contract, lease, or by the exercise of the power of eminent domain any and all rights of property, either public or private, of every kind and character necessary for the purposes of the District. In exercising the right of eminent domain, the District shall follow the procedure that is now provided by Article XXI of the Charter of the City of St. Louis, or the procedure prescribed by Chapter 88, Revised Statutes of Missouri, as amended. The District may sell and convey any property no longer necessary or useful in its operations.

(7) To contract with municipalities, districts, other public agencies, individuals, or private corporations, or any of them whether within or without the District, for the construction, use, or maintenance of common or joint sewers, drains, outlets, and disposal plants, or for the performance of any service required by the District.

(8) To contract with, and thereunder to permit municipalities, districts, other public agencies, individuals, or private corporations, or any of them whether within or without the District, to connect with and use the facilities of the District. The rates

for such service and connections shall be such as may be agreed upon between the contracting parties.

(9) To enter into and perform contracts, whether long-term or short-term, with any establishment, whether within or without the District, for the provision and operation by the District of sewerage and stormwater facilities to abate or reduce the pollution of waters caused by discharges of wastes by such establishment, and the payment periodically by such establishment to the District of amounts at least sufficient to compensate the District for the cost of providing (including payment of principal and interest charges, if any) and operating and maintaining the sewerage and stormwater facilities serving such establishment.

(10) To enter into negotiations with the Federal Government and the State of Missouri and other states and political subdivisions thereof, or the agencies of any of them, and apply for and obtain from any of them, any and all assistance and grants-in-aid that may be available.

(11) To enter into such agreements as are required by law for the purpose of extending the benefits of the federal old-age and survivors insurance system to employees of the District.

(12) To make contracts and execute all instruments necessary or proper in the premises.

(13) To incur debts by borrowing money or otherwise, and to give any appropriate evidence thereof.

(14) To provide for the borrowing of money in anticipation of the collection of taxes and revenues for the fiscal year. The amount of such loans shall at no time exceed ninety per cent of the estimated collectible taxes and revenues for the year yet uncollected. The Board shall determine by ordinance the amount and terms of such loans, and the Executive Director shall execute and issue warrants of the District for all money so borrowed to the lenders thereof as evidence of such loans and of the terms of the District's obligation to repay the same. Immediately before their delivery to such lenders, such warrants shall be registered in the office of the Director of Finance of the District and, upon delivery, shall also be registered in the office of the Secretary-Treasurer of the District. Such warrants so issued and registered in connection with such loans shall have preference and priority in payment from the date of their registration by the Secretary-Treasurer over all warrants subsequently issued.

(15) To meet the cost of acquiring, constructing, improving, or extending all or any part of the sewer or drainage facilities and systems: (a) through the expenditure of any funds available for that purpose; (b) through the issuance of bonds for that purpose, payable from taxes to be levied and collected by the District; (c) through the issuance of bonds for that purpose, payable from special benefit assessments levied and collected by the District; (d) from the proceeds of special benefit assessments or bills evidencing such assessments; (e) from any other funds which may be obtained under any law of the state or of the United States for that purpose; (f) from the proceeds of

Page 6

revenue bonds, payable from the revenues to be derived from the operation of sewerage and drainage facilities and systems of the entire District or of a subdistrict, as the case may be, as may be set forth in propositions submitted at elections in the District or subdistrict from time to time called and held to authorize the issuance of such revenue bonds; or (g) from any combination of any or all such methods of providing funds.

(16) To establish by ordinance a schedule or schedules of rates, rentals, and other charges, to be collected from all the real property served by the sewer facilities of the District, whether public or private, and to prescribe the manner in which and time at which such rates, rentals, and charges are to be paid, and to change such schedule or schedules from time to time as the Board may deem necessary, proper, or advisable, and to collect or enforce collection of all such charges. Such schedule or schedules may be based upon any classifications or sub-classifications which the Board may determine to be fair and reasonable, whether similar or dissimilar to those hereinafter enumerated and which are or shall be established by ordinance, including but not limited to: (a) the consumption of water on premises connected with such facilities, taking into consideration commercial, industrial, and agricultural use of water; (b) the number and kind of plumbing fixtures connected with such facilities; (c) the number of persons served by such facilities; or (d) any combination of the factors enumerated. Any such rates, rentals, or other charges against public property shall be paid out of the general treasury of the public body, agency, corporation, or authority owning such property.

(17) To enter into an agreement or agreements with any municipality, other public agency, or private water company for the collection of rates, rentals, or other charges levied by the District for sewer services. Such municipality, other public agency, or private water company is hereby authorized to collect such rates, rentals, or other charges and to discontinue water services upon any failure to pay the same within the time prescribed by ordinance. If any municipality, other public agency, or private water company situated within the District possesses any information which will assist the District in calculating such rates, rentals, or other charges for sewer services, it shall be the duty of such municipality, other public agency, or private water company to furnish such information to the District.

(18) To enter on any lands, waters, and premises for the purposes of making surveys, soundings, and examinations.

(19) To approve, revise, or reject the plans and designs of all outfall sewers, trunks, mains, submains, interceptors, lateral sewers, outlets for sewerage, storm water drains, pumping and ventilating stations, and disposal and treatment plants and works proposed to be constructed, altered, or reconstructed by any other person or corporation, private or public, in the District. No such sewer or drainage facilities shall be constructed or reconstructed without the approval of the District. Any such work shall be subject to inspection and supervision of the District.

Page 7

(20) To levy, assess, and collect taxes on all taxable property within the District or a subdistrict, as the case may be; provided, that the rate of taxation for purposes of operation and maintenance shall not exceed ten cents on the hundred dollars assessed valuation.

(21) To fix, levy, and collect special benefit assessments for the construction, improvement, or extension of sewer or drainage facilities, levied upon such lots or parcels of ground within the District, whether public or private, as are benefited by said construction, improvement, or extension, and for such purposes to provide by ordinance for the classification and reclassification of such benefited properties into such classes or subclasses as the Board may determine to be fair and reasonable. In the case of subdistrict establishment as provided for in paragraph 24 of this section, the ordinance establishing the subdistrict shall outline the method for determining the fair and reasonable distribution of the expenses of the subdistrict and the fair and reasonable method of voting for any improvements in the subdistrict as outlined in Section 9.020 based on the benefits to each parcel of the subdistrict.

(22) To provide a retirement system for employees of the District if and when permissible under the Constitution and laws of the State of Missouri.

(23) To require the owner or owners of any real property capable of being efficiently served by the facilities of the District to connect with and use such facilities in any case where the Board finds that the sewage or drainage from such property constitutes a public nuisance or a danger to public health or safety.

(24) To subdivide the District into subdistricts and prescribe the boundaries thereof within which sewer or drainage facilities may be constructed, reconstructed, or improved at the expense of the subdistrict; provided, that in no case shall the boundaries of any such subdistrict extend beyond the area capable of being efficiently served or drained by the sewer or drainage facilities to be constructed, reconstructed, or improved. Any property owner or property owners of the District may petition the Board to establish such subdistrict, and the Board shall consider such petition as promptly as possible. Said petition must be signed by a majority of the owners of land in said land area, who are also the owners of more than one-half of the land area therein. When such subdistrict has been established in the manner provided in this Plan, the Board shall possess and exercise within such subdistrict all the powers, duties, and functions which are prescribed herein for the District as a whole. The Board may appoint a committee of property owners of any such subdistrict to serve in an advisory capacity. The Board may in its discretion disestablish any such subdistrict when its purposes have been fulfilled.

(25) To provide for the functional administration of other Services common to the area within the District when authorized by amendment to this Plan proposed and adopted in the manner herein provided.

(26) To establish environmentally sustainable standards and practices, as permitted by Federal and State statute, to address area drainage and water quality concerns.

Page 8

**SECTION 3.030. District Board authorized to establish building or floodway reservation lines along streams — Control use of area within lines.—** The Board is authorized, when, in its judgment, the public health or convenience or the adequate sewerage and drainage of said District shall require such action or when it shall be necessary for the construction of any bridge, sewer, culvert, highway embankment, or other public works in said District, or for the protection and security of any such public works already constructed, or when the protection of public or private property within the confines of said District from the encroachment of flood waters shall require such action: (a) to establish along and adjacent to any watercourse or stream, natural or artificial, or any part thereof, running in or through or bordering on the District, building lines or floodway reservation lines; (b) to control, as hereinafter provided, the use of private lands within such lines; (c) to establish along and adjacent to any watercourse or stream, natural or artificial, or any part thereof, running in or through or bordering on the District, bank lines or normal flow lines, grades, slopes, and cross sections and to take, occupy, and appropriate the bed of any such stream or part of a stream and any or all of the banks adjacent to such stream, and to straighten, deepen, move, lower, or otherwise alter such stream or part of a stream or the banks thereof; (d) to remove any or all walls, dams, or flumes or other obstructions to the free and healthy flow of water at any time of year, either under normal conditions or during times of flood; (e) to raise, lower, or otherwise alter any such existing structures; (f) to build and maintain other walls, dams, flumes, canals, artificial channels, revetments, slope or channel paving or protection works, or other stream control works; (g) to cover any such stream or cause it to flow through a sewer or other aqueduct built in and upon the bed of such stream or adjacent thereto, or at some other location; (h) to divert any stream or part of a stream from its natural or present channel into a new or different channel and to fill in, if it seems advisable, the old channel or any part thereof; (i) to do and perform any and all other acts necessary, beneficial, or expedient to carry into effect the above and foregoing purposes and powers.

Such building lines, when established shall become the limits of floodway reservations and no building or part of a building or appurtenance thereof or any structure shall be set up or erected within the reservation so established and, except by permission of the Board, no fill shall be made which may diminish the area of flow or otherwise obstruct in any way the free flow of flood waters in such reservation nor without such permission shall any dams, walls, or other watertight or practically watertight structures be constructed or placed within such reservation, and the Board shall fix by ordinance the method and manner of granting such permission.

**SECTION 3.040. District Board authorized to police streams — Penalties. —** Upon the completion of the layout establishing such building lines along stream, the authorized agents of the Board shall have the right to enter upon the land enclosed thereby and to clean, police, and otherwise maintain the channel and banks of the stream or watercourse, so that the natural and healthful flow of the stream may be maintained at all times. The Board may by ordinance prohibit the depositing, dumping, or otherwise disposing within such building lines of any sewage, garbage, rubbish, industrial wastes, loose material, oils, or other soluble or insoluble solid or liquid matter, which may pollute the stream or subsequently be washed away or carried downstream or which may leave unhealthful or unsightly traces either in the bed of the stream or on the banks thereof, and may require any person or persons who shall have

Page 9

violated any of the provisions of such ordinance to remove any or all material they may have deposited or otherwise disposed of within such lines, and, in case of the failure of the owner of any land within such lines to remove any such material, the Board may order such material removed at the expense of such owner and, if the owner shall fail to pay the cost of such work, the District may file a lien for the amount thereof against the property with the Recorder of Deeds of the City of St. Louis or the Recorder of Deeds of St. Louis County, as the case may be, and the Board may, by ordinance, establish penalties to be imposed when any of the provisions of any ordinances authorized under this section shall have been violated.

**SECTION 3.050. Board authorized to adopt ordinances, rules, etc.** — The Board shall have the power to adopt and promulgate all ordinances, rules, regulations, by-laws, and agreements necessary, beneficial, or expedient to regulate the use, operation, and maintenance of property and facilities under its control, and to take such further action as may be necessary to carry into effect the powers granted the District by this Plan.

## ARTICLE 4

### ENFORCEMENT OF DISTRICT ORDINANCES

**SECTION 4.010. Violation of District ordinances — Where tried — Maximum penalties.** — Any violation of a District ordinance is hereby declared to be a misdemeanor and shall be punishable before the St. Louis City Court  when such violation occurs in that part of the District situated within the corporate limits of the City of St. Louis, and before the St. Louis County Municipal Court when such violation occurs in that part of the District situated within the corporate limits of said county. If the defendant pleads or is found guilty of a violation of a District ordinance, the judge or the magistrate, as the case may be, shall declare and assess the punishment prescribed by ordinance according his/her findings or verdict of the jury and render judgment accordingly and for costs, except that no ordinance shall fix as a penalty a fine of more than one thousand dollars or imprisonment in the city workhouse or the county jail, as the case may be, for more than one year or both such fine and imprisonment. It shall be part of such judgment that the defendant stand committed until such judgment is complied with.

**SECTION 4.020. Style of prosecutions.** — All prosecutions for the violation of a District ordinance shall be titled: "The Metropolitan St. Louis Sewer District vs. ..........................." (naming the person or persons charged).

**SECTION 4.030. Informations by City Counselor or County Counselor.** — Informations involving violation of District ordinances shall be filed by the  City Counselor of the City of St. Louis, under his/her oath of office, when such violation occurs in that part of the District situated within the corporate limits of said city, and by the County Counselor of St. Louis County, under his/her oath of office, when such violation occurs in that part of the District situated within the corporate limits of said county;  pursuant to Missouri Supreme Court Rule 37, Statutory and Ordinance Violations (adopted May 14, 1985, effective January 1, 1986), as amended.

**SECTION 4.040. Enforcement of District ordinances.** — The police in the City of St. Louis and the police in St. Louis County are hereby charged with the enforcement of all District ordinances in such parts of the District as are situated within their respective jurisdictions.

**SECTION 4.050. Procedure same as in misdemeanor cases.** — Unless in conflict with the provisions of this Plan, the provisions of Missouri Supreme Court Rule 37, Statutory and Ordinance Violations (adopted May 14, 1985, effective January 1, 1986), as amended, shall apply to such enforcement actions.

ARTICLE 5

BOARD OF TRUSTEES

**SECTION 5.010. Trustees -- Number -- Appointment -- Term.** -- The Board shall consist of six members to be known as Trustees, three of whom shall be appointed by the Mayor of the City of St. Louis and three of whom shall be appointed by the County Executive of St. Louis County. Each Trustee shall be appointed for a term of four years. No Trustee shall serve more than two full consecutive terms plus any portion of an unexpired term. Provided, however, that each Trustee shall serve until his/her successor shall be appointed and qualified. Not more than two Trustees appointed from said City or County, as the case may be, shall be affiliated with the same political party.

When a vacancy occurs on the Board, the Mayor or County Executive, as the case may be, may appoint Trustees directly or from a list of nominees submitted by one or more residents of the District. Not less than 90 days prior to the expiration of any Trustee's term, the District shall cause notice of such expiration of a Trustee's term to be given by mail, publication or electronic media, or such other form of communication as may be required by Missouri law. The notice shall also contain a description of the responsibilities and qualifications of a Trustee, and state that ratepayers and residents are invited to submit nominations to the Mayor or County Executive, as the case may be. In the case of a vacancy resulting in an unexpired term, the Mayor or County Executive may request and the District then shall give such notice.

**SECTION 5.020. Trustees -- Qualifications.** -- Each Trustee appointed by said Mayor shall be a registered voter of the City of St. Louis, shall have been a resident thereof for at least three years next before his/her appointment, and shall continue to reside therein during his/her tenure of office. Each Trustee appointed by said County Executive shall be a registered voter of St. Louis County, shall have been a resident of said County for at least three years next before his/her appointment, and at the time of his/her appointment and during his/her tenure of office shall be a resident of the portion of said County situated within the District. Each Trustee shall comply with all applicable provisions of Missouri law with respect to conflicts of interest. No person holding an office of profit under the United States or any state or local government shall be appointed to the Board, members of the organized militia or of the reserve corps and notaries public excepted. No person who shall have been convicted of a felony, malfeasance in office, bribery, or other corrupt practice, or of a misdemeanor involving moral turpitude shall be appointed to the Board, and if any Trustee shall be so convicted, he/she shall thereby forfeit his/her office.

**SECTION 5.030. Removal of Trustees.** -- Any Trustee appointed by said Mayor or County Executive, as the case may be, may be removed by said Mayor or County Executive, as the case may be, only upon charges and a finding of nonfeasance, malfeasance, or misfeasance in office and after a public hearing to be held not less than ten days and not more than sixty days after a written statement of the specific acts charged has been given to such a member and a copy thereof filed with the Secretary-Treasurer of the District. At the hearing, the Trustee may be represented by an attorney and shall be entitled to present witnesses in his/her defense. The

Page 12

decision of said Mayor or County Executive, as the case may be, shall be final. A copy of such decision shall be filed with the Secretary-Treasurer of the District.

**SECTION 5.040. Compensation of Trustees.** — The compensation of a Trustee shall be the sum of twenty-five dollars for each day on which he/she actually attends a regular or special meeting of the Board. Trustees shall be reimbursed for their necessary and reasonable expenses incurred in the discharge of their duties.

**SECTION 5.050. Board meetings.** — The Board shall hold regular meetings at such times as may be prescribed by ordinance, but not less than once each month. All meetings of the Board shall be open to the public as provided by law. Special meetings may be called in such manner as may be prescribed by ordinance. The Mayor of the City of St. Louis and the County Executive of St. Louis County are invited to attend or be represented at all Board meetings.

**SECTION 5.060. Rules of Board business — Quorum.** — The Board shall determine its own rules and order of business and shall keep a journal of its proceedings. A majority of the members of the Board shall constitute a quorum, but a smaller number present at any meeting may adjourn from day to day or to a day certain and may compel the attendance of absent members in such manner and under such penalties as the Board may by ordinance provide.

**SECTION 5.070. Introduction, form, and passage of ordinances, etc.** — Ordinances, resolutions, regulations, rules, and orders shall be introduced by a member or members of the Board or by the Board as a whole, and said ordinances, resolutions, regulations, rules, and orders shall be in written or printed form. The enacting clause of all ordinances passed by the Board shall be: "Be It Ordained by the Board of Trustees of The Metropolitan St. Louis Sewer District." An affirmative vote by two members of the Board appointed from the City of St. Louis and two members of the Board appointed from St. Louis County shall be necessary to pass any ordinance, resolution, regulation, rule, or order. On the final passage of any ordinance, resolution, regulation, rule, or order, the yeas and nays shall be entered by name on the journal, and at the request of any one member of the Board the yeas and nays on any other question shall be so entered. All ordinances, resolutions, regulations, rules, orders, and proceedings of the Board shall be public records and shall be kept by the Secretary-Treasurer and available for public examination.

**SECTION 5.080. Ordinances and amendments to be set forth in full.** — No ordinance shall be revived or re-enacted by mere reference to the title thereof, but the same shall be set forth at length. No section or sections of any ordinance shall be amended except that the section or sections amended shall be set forth in full as amended.

**SECTION 5.090. Reading of ordinances — Minimum period between introduction and passage.** — The title of all ordinances shall be read at least once in open session of the Board before passage, and without unanimous consent of all members of the Board present no final vote shall be taken on the passage thereof until the expiration of at least fourteen days from the time that such ordinance was first introduced; provided that an ordinance which has been

introduced may be amended after introduction and prior to its passage if such amendments are germane to the original purpose of the ordinance.

**SECTION 5.100. Effective date of ordinances.** — Every ordinance except an appropriation ordinance an emergency measure or as provided in Article 7 addressing the Rate Commission, shall take effect at the expiration of fifteen days after the date said ordinance is enacted, unless a later date therefor be fixed therein. An appropriation ordinance or an emergency measure shall take effect immediately upon its enactment; provided, however, that no ordinance shall be designated an emergency measure unless it contains the statement that an emergency exists and specifies distinctly the facts and reasons constituting the emergency.

**SECTION 5.110. Strategic plan.** — A continuing five-year strategic and operating plan for the District shall be adopted on an annual basis by the Board. The strategic and operating plan shall state the District's objectives for the succeeding five years and include objective targets by which to measure the District's performance in meeting these objectives.

## ARTICLE 6

### EXECUTIVE DIRECTOR

**SECTION 6.010. Executive Director – Appointment – Qualifications – Duties.** -- There shall be an Executive Director who shall be appointed by, and subject to removal by, the Board. The Executive Director shall be a registered professional engineer and shall possess technical or specialized skill or knowledge in the field of engineering. The Executive Director shall have had at least ten years' practical experience as an engineer, at least five years of which shall have been in a responsible administrative and executive capacity. The Executive Director shall devote his/her entire time to the duties of his/her office. The Executive Director shall be the chief executive and administrative officer of the District and all subdistricts and shall be responsible to the Board for the proper administration of all affairs of the District and all subdistricts, and to that end the Executive Director shall:

(1) Appoint and, when necessary for the good of the service, remove all officers and employees of the District and all subdistricts, except as otherwise provided in this Plan, and except as the Executive Director may authorize the head of a department or office to appoint subordinates in such department or office, subject to the personnel provisions of this Plan.

(2) Prepare the budget annually and submit it to the Board and be responsible for its administration after adoption.

(3) Prepare and submit to the Board, as of the end of the fiscal year, a complete report of the finances and administrative activities of the District and all subdistricts for the year.

(4) Keep the Board advised of the financial condition of the District and all subdistricts and make recommendations concerning their future needs.

(5) Attend all meetings of the Board and, in so far as possible, its committees, except when the Board may be considering removal of the Executive Director. The Executive Director shall have the right to take part in discussions, but shall have no power to vote.

(6) Enforce all District ordinances and see that all contracts are faithfully performed.

(7) To advise, assist, and cooperate in fostering the interest of institutions of learning and civic, professional, and employee organizations in the improvement of personnel standards and conditions in the District.

(8) Perform such other duties as may be prescribed by this Plan or required of the Executive Director by the Board, not inconsistent with this Plan.

## ARTICLE 7

### FINANCE AND TAXATION

**SECTION 7.010. Director of Finance — Appointment — Qualifications — Duties.** -- There shall be a Director of Finance who shall be appointed by the Executive Director. The Director of Finance shall devote his/her entire time to the duties of his/her office. The Director of Finance shall have knowledge of municipal accounting and taxation and shall have had experience in budgeting and financial control. The Director of Finance shall have charge of the administration of the financial affairs of the District and all subdistricts, subject to the supervision and direction of the Executive Director, and to that end he/she shall:

(1) Assist the Executive Director in the preparation of the annual budget and in the control of all expenditures to insure that budget appropriations are not exceeded.

(2) Maintain the general system of accounts for the District and all subdistricts, and keep such books and records and submit such financial statements to the Executive Director and the Board as they may require.

(3) Prescribe the forms of all financial records, receipts vouchers, bills, or claims to be used by all offices, departments, and agencies of the District and any subdistrict.

(4) Certify, before any contract, order, or other document has been executed by which the District or any subdistrict incurs financial obligation, that the expenditure is within the purpose of the appropriation to which it is to be charged and that there is an unencumbered balance in the appropriation sufficient to pay the obligation; provided, that where a contract extending beyond the current fiscal year is authorized by ordinance, it shall be sufficient for the Director of Finance to certify that there is an unencumbered appropriation balance sufficient to pay all expenditures required under such contract during the current fiscal year.

(5) Audit and approve before payment all bills, invoices, payrolls, and other evidences of claims, demands, or charges against the District or any subdistrict, and in the event of the absence or disability of the Executive Director draw warrants upon the treasury.

(6) Inspect, supervise, and audit the accounts or records of financial transactions which may be maintained in any office, department, or agency of the District or any subdistrict apart from or subsidiary to the accounts kept in his/her office.

(7) Contract for, purchase, store, and distribute, pursuant to rules and regulations established by ordinance, all supplies, materials, and equipment required by any office, department, or agency of the District or any subdistrict.

(8) Perform such other duties as may be imposed by the Executive Director or by ordinance.

Page 16

**SECTION 7.020. Secretary-Treasurer — Appointment — Qualification — Duties.** — There shall be a Secretary-Treasurer who shall be appointed by and subject to removal by the Board. The Secretary-Treasurer shall have at least ten years experience in the management and investment of public funds, and have knowledge of banking operations and municipal accounting. The Secretary-Treasurer shall:

    (1) Keep a record of the Board's proceedings, and authenticate by his/her signature and record all ordinances, resolutions, regulations, rules, and orders.

    (2) Have custody of all funds belonging to or under the control of the District or any subdistrict, and deposit daily all moneys coming into his/her hands in such depositaries as are designated by the Board.

    (3) Invest, with the approval of the Board, funds not immediately needed for the purpose to which said funds are applicable, in the same manner as the state treasurer may invest funds of the State of Missouri pursuant to Section 15, Article IV of the Constitution of Missouri, as amended from time to time.

    (4) Pay money out of the treasury on warrants drawn by the Executive Director, or by the Director of Finance in the absence or disability of the Executive Director, and not otherwise.

    (5) Appoint and, when necessary for the good of the service, remove any employees provided for his/her office, subject to the personnel provisions of this Plan.

    (6) To advise, assist, and cooperate in fostering the interest of institutions of learning and civic, professional, and employee organizations in the improvement of personnel standards and conditions in the District.

    (7) Perform such other duties as are required by the Board.

The Board shall provide for the performance of the duties of the Secretary-Treasurer in the event of his/her absence or disability.

**SECTION 7.030. Internal Auditor — Appointment — Qualifications — Duties.** — There shall be an Internal Auditor who shall be appointed by, and subject to removal by, the Board. The Internal Auditor shall have had at least ten years experience in accounting. The Internal Auditor need not be an individual, but may be a firm of Certified Public Accountants, no partner or owner of which shall have any personal or financial interest, direct or indirect, in the fiscal affairs of the District or any subdistrict or have any material financial relationship with any Trustee or any officer of the District, and who shall have no affiliation with the Certified Public Accountant engaged for the independent annual audit.

The Internal Auditor shall be the auditing officer of the District. The Internal Auditor shall:

    (1) From time to time review the accounting system of the District and recommend to the Board such changes as deemed necessary for greater economy and efficiency in the administration of public funds.

(2) Audit the accounts and records of accountable officers and employees of the District, giving due regard to generally accepted principles of auditing, including consideration of the effectiveness of the accounting system, internal audit and control and related administrative practices in all District offices.

(3) Investigate matters relating to the receipt, disbursement and application of public funds.

(4) Make such other investigations and reports in relation to fiscal matters as shall be directed by the Board.

(5) Perform, from time to time, operational audits and recommend to the Board such changes as shall enhance the efficient and effective operation of the District.

(6) Evaluate compliance with the policies of the District, the requirements of the Plan, District ordinances, third party agreements and government grants.

(7) Whenever the Internal Auditor deems it necessary to any investigation, examine the parties, witnesses and others concerning any matter or circumstance in such examination.

(8) Perform such other duties as may be prescribed by this Plan or as may be required by the Board.

All officers and employees of the District shall furnish to the Internal Auditor such information and records of the District as the Internal Auditor may, from time to time, request.

**SECTION 7.040. Rate Commission.** — There shall be a rate commission ("Rate Commission") to review and make recommendations to the Board regarding all proposed changes in wastewater rates, stormwater rates and tax rates or change in the structure of any of the foregoing ("Rate"). The Rate Commission shall be established by the Board as promptly as possible but not later than ninety (90) days after approval of the amendment to the Plan which provides for its establishment. Upon receipt of a Rate Change Notice from the District pursuant to Section 7.280, the Rate Commission shall recommend changes in Rates to the Board that will be necessary to pay interest and principal falling due on bonds issued to finance assets of the District, the costs of operation and maintenance and such amounts as may be required to cover emergencies and anticipated delinquencies.

**SECTION 7.050. Disbursements must be made pursuant to appropriations and for legal purposes — Liability of officers.** — No money shall be drawn from the District treasury, nor shall any money obligation be incurred except pursuant to an appropriation made by the Board, and at the end of the fiscal year the unexpended and unencumbered parts of all appropriations shall revert to the funds from which appropriated. Any official approving for payment any claim for which there is not a sufficient unencumbered balance in the appropriation, or which is in any way contrary to the provisions of this Plan or any law or

District ordinance, shall be liable therefor in person and on his/her bond, and shall be subject to removal from office.

**SECTION 7.060. Management audit.** — An independent audit shall be made of the management of the District at least every five years by a nationally recognized management consulting firm which shall be engaged by the Board. Such management consulting firm shall have no personal or financial interest, direct or indirect, in the fiscal affairs of the District or have any material financial relationship with any trustee or any officer of the District. Additionally, no such consulting firm shall conduct two consecutive management audits as required by this section.

**SECTION 7.070. Annual Report.** — At least annually, the Board of Trustees shall make a written report to the Mayor and the Board of Aldermen of the City and to the County Executive and County Council of the County describing the District's activities in the prior year and describing the District's proposed activities for subsequent periods. Such written report shall be made available to the ratepayers of the District and shall be presented orally in such time, place and manner as convenient for the Mayor, the Board of Aldermen, the County Executive and the County Council, respectively.

**SECTION 7.080. Annual audit.** — An independent audit shall be made of all accounts of the District and all subdistricts at least annually by a Certified Public Accountant who shall be engaged by the Board. Such Certified Public Accountant shall have no personal or financial interest, direct or indirect, in the fiscal affairs of the District or any subdistrict or of any officer of the District. The Board shall not engage such firm for a period in excess of five consecutive years.

**SECTION 7.090. Fiscal year.** — The fiscal year of the District shall be the twelve months beginning on the first day of July in each calendar year. The fiscal year shall constitute the budget and accounting year.

**SECTION 7.100. Competitive bidding.** — Before the District makes any purchase of or contract for supplies, materials, or equipment, or lets any contract for work or improvements, the Executive Director shall provide ample opportunity for competitive bidding, under such rules and regulations and with such exceptions arising out of emergencies and other causes as the Board upon recommendation of the Executive Director may prescribe by ordinance; provided, however, that the Board shall not except individual contracts, purchases, or sales from the requirement of competitive bidding for the purpose of evading the requirement of competitive bidding, nor shall it permit the subdivision of purchases or contracts for the purpose of evading the requirements of competitive bidding. All bids may be rejected. Except for such right of rejection or as provided in Article 9 of this Plan the purchase or contract shall be let to the lowest responsible bidder.

**SECTION 7.110. Official bonds.** — The Executive Director, Director of Finance, Secretary-Treasurer, and all other officers and employees receiving, disbursing, or responsible for District funds, and such other officers and employees as the Board may designate, shall, before entering upon the discharge of their duties, give bond to the District in such sums and

Page 19

with such sureties as shall be prescribed by ordinance, and subject to approval by the Board, conditioned upon the faithful and proper performance of their duties and for the prompt accounting for and paying over to the District of all moneys, property, or other thing of value of the District or any subdistrict that may come into their hands. The District shall pay the premiums on all such bonds. Unless otherwise provided by ordinance, the bond of the Secretary-Treasurer shall be filed with the Executive Director, and the bonds of all other officers and employees shall be filed with the Secretary-Treasurer.

**SECTION 7.120. Depositaries and security for funds deposited.** — The Board shall annually select one or more banks or trust companies, situated in the District, for the deposit of all funds of the District and any subdistricts. For the security of the funds deposited in such depositaries, the Board shall require each such bank or trust company to deliver to the Secretary-Treasurer or to a disinterested banking institution or safe depositary, as escrow agent or trustee, securities of the kind character and amounts as provided in Section 30.270, Revised Statutes of Missouri, as amended. The Board may, in its discretion, provide additional requirements or limitations as to the kind and character of securities which will be accepted as security for such deposits.

**SECTION 7.130. Annual budget required — Must be balanced.** — Not later than the fifteenth day of March in each year, the Executive Director shall submit to the Board a budget for the ensuing fiscal year, an explanatory budget message, and a general appropriation ordinance conforming with such budget. The budget shall provide a complete financial plan for the budget year for all District and subdistrict funds, and shall include the following:

(1) Estimated revenues to be actually received from all sources during the budget year, together with a comparative statement of revenues for the two years next preceding, itemized by year, fund, and source.

(2) Proposed expenditures, including projected expenses included in the Rate Commission's budget as provided in Section 7.260, recommended by the Executive Director for the budget year, together with a comparative statement of expenditures for the two years next preceding, itemized by year, fund, activity, and object.

(3) The amount required for the payment of interest, amortization, and redemption charges on the debt of the District or any subdistrict.

(4) A general budget summary.

(5) A list of capital projects.

In no event shall the total amount of proposed expenditures for the budget year from any fund exceed the estimated revenues to be actually received plus any unencumbered balance or less any deficit estimated for the beginning of the budget year.

**SECTION 7.140. Adoption of general appropriation ordinance — Any increase over budget must be balanced by additional revenues. —** After submittal of the budget to the Board and before adoption of the budget, the Board shall hold a public hearing at least 21 days before adoption of the budget in order to obtain public comment on the proposed budget. The Board shall adopt the general appropriation ordinance, with such modifications as it considers advisable, not later than the thirtieth day of June of each year; provided, however, that the Board shall not authorize additional expenditures from any fund in excess of the total amount proposed in the budget unless it shall adopt an ordinance or ordinances providing additional revenues, and unless the Executive Director estimates that the amount of such additional revenues to be actually received during the budget year will equal or exceed the amount of such additional expenditures. Prior to the adoption of any ordinance providing such additional revenues, if such additional revenues are to be generated as a result of a Proposed Rate Change, the Board shall receive a Rate Commission Report setting forth the Proposed Rate Change and shall comply with the provisions of Section 7.300.

**SECTION 7.150. Transfer of appropriations. —** Whenever approved by the Board, the Executive Director may transfer any unencumbered appropriation balance or portion thereof from one classification of expenditure to another.

**SECTION 7.160. Supplementary appropriations must not exceed revenues. —** At any time during the budget year upon recommendation of the Executive Director, the Board may by ordinance make supplementary appropriations if (1) the Executive Director estimates that such appropriations will not result in a deficit at the end of the budget year, or (2) the Board shall adopt an ordinance or ordinances consistent with the requirements of Section 7.140 providing additional revenues and the Executive Director estimates that the amount to be actually received therefrom during the budget year will equal or exceed the amount of such supplementary appropriations.

**SECTION 7.170. Bond issues — Vote required — Ordinances relating thereto. —** No general obligation bonds, except bonds for refunding, advance refunding, extending, or unifying the whole or any part of valid bonded indebtedness, shall be issued without the assent of the voters of the District or a subdistrict, as the case may be, in the number required by Article VI, Section 26(b) of the Constitution of Missouri (as amended from time to time), voting at an election to be held for that purpose. No revenue bonds payable from the revenues to be derived from the operation of any or all sewer and drainage systems and facilities of the District or a subdistrict, as the case may be, except bonds for refunding, advance refunding, extending, or unifying the whole or any part of revenue bonds, shall be issued without the assent of a simple majority of the voters of the District or a subdistrict, as the case may be, voting at an election to be held for that purpose. Notwithstanding anything herein to the contrary, the District is expressly authorized to issue District-wide general obligation and revenue bonds. All forms, proceedings, and other matters with respect to any bond election and the amounts, purposes, issue, and disposition of bonds shall be prescribed by ordinance adopted by the Board.

**SECTION 7.180. Serial or call bonds. —** Bonds may be so issued as to be payable serially or subject to call or both.

**SECTION 7.190. Maximum term and amount of bonds — Adequate taxes and charges required.** — Before any general obligation bonds are issued, the Board shall by ordinance provide for the collection of an annual tax on all taxable tangible property within the District or a subdistrict, as the case may be, sufficient to pay the interest and the principal of such bonds as they fall due and to retire the same within twenty years from the date contracted. If the District has delivered a Rate Change Notice to the Rate Commission pursuant to Section 7.280, the Board shall, prior to the adoption of the above-mentioned ordinance, receive a Rate Commission Report setting forth the Proposed Rate Change and shall comply with the provisions of Section 7.300. No general obligation bonds shall be issued in an amount which together with existing indebtedness of the District or a subdistrict, as the case may be, if any, exceeds in the aggregate five per cent of the value of all taxable tangible property in the District or a subdistrict, as the case may be, as shown by the last completed assessment for state and county purposes; provided, however, that no revenue bonds issued under the provisions of this Plan shall constitute an indebtedness of the District or a subdistrict, as the case may be, within the meaning of said limitation.

Whenever any revenue bonds are outstanding against any or all sewer and drainage systems and facilities of the District or a subdistrict, as the case may be, the rates, rentals, or other charges to be collected from all real property shall be sufficient at least to pay the operation and maintenance expenses of such systems and facilities and the interest and principal payments as they accrue on such bonds and renewals, plus such amount as may be required to cover emergencies and anticipated delinquencies. If the District has delivered a Rate Change Notice to the Rate Commission pursuant to Section 7.280, the Board shall, prior to the adoption of an ordinance increasing such rates, rentals or other charges, receive a Rate Commission Report setting forth the Proposed Rate Change and shall comply with the provisions of Section 7.300.

Any special benefit assessment bonds issued under this Plan shall mature over a period not exceeding twenty years from the date contracted.

**SECTION 7.200. Issuance of refunding bonds.** — For the purpose of refunding, extending, or unifying the whole or any part of its valid bonded indebtedness, the District or a subdistrict, as the case may be, may issue refunding or advance refunding bonds not exceeding in amount the principal of the outstanding indebtedness to be refunded and the accrued interest to the date of such refunding bonds. The Board shall provide for the payment of interest and the principal of such refunding or advance refunding bonds, in the same manner as was provided for the payment of interest and principal of the bonds refunded.

**SECTION 7.210. Sale of bonds.** — All bonds issued under this Plan shall be sold upon such terms and conditions as the Board may determine.

**SECTION 7.220. Membership.** — The Rate Commission shall consist of one representative from each of fifteen (15) organizations within the District, each of which shall be identified and designated in an ordinance adopted by the Board as a "Rate Commission Representative Organization". Any organization designated as a Rate Commission Representative Organization shall consist primarily of and be representative of ratepayers of the District.

**SECTION 7.230. Organization. —**

(a) The Board shall, by ordinance, identify the initial Rate Commission Representative Organizations and shall state the term of years during which each such initial Rate Commission Representative Organization shall serve. Organizations shall be selected by the Board so as to insure a fair representation of all users of the District's services on the Rate Commission. Specifically, Rate Commission Representative Organizations shall represent commercial-industrial users, residential users and other organizations interested in the operation of the District, including by way of example but not by way of limitation, organizations focusing on environmental issues, labor issues, socio-economic issues, community-neighborhood organizations and other nonprofit organizations. The Board shall promptly notify each Rate Commission Representative Organization in writing of its selection. The City of St. Louis, St. Louis County, and the District shall not be eligible Rate Commission Representative Organizations.

(b) Each Rate Commission Representative Organization shall designate one individual to represent it and to serve on the Rate Commission. Such person shall hereafter be referred to as the "Rate Commission Delegate". Each Rate Commission Representative Organization shall notify the District of the name and address of its Rate Commission Delegate on or before the date specified in the notice issued to each Rate Commission Representative Organization under subsection (a) hereinabove. Each Rate Commission Representative Organization may name and appoint substitute Rate Commission Delegates during its tenure. If a Rate Commission Representative Organization fails to timely designate a Rate Commission Delegate or if the Rate Commission Delegate fails to substantially participate in the proceedings of the Rate Commission, such failure shall constitute a resignation of the Rate Commission Representative Organization from the Rate Commission and the Board may select a substitute Rate Commission Representative Organization to the Rate Commission.

**SECTION 7.240.    Term of Membership.** -- Each Rate Commission Representative Organization selected by the Board shall have the right to designate a Rate Commission Delegate to the Rate Commission for a term of six (6) years or completion of any unexpired term, except that the term of each of the initial Rate Commission Representative Organizations shall expire as designated in the initial ordinance adopted by the Trustees pursuant to Section 7.220 so that five terminate at the end of two years, five terminate at the end of four years and five terminate at the end of six years following the formation of the first Rate Commission. The Board shall designate organizations within the District to succeed such Rate Commission Representative Organization, provided, however, that each Rate Commission Representative Organization shall serve until its successor shall be appointed and qualified. Nothing herein shall bar a Rate Commission Representative Organization from being named to successive terms.

**SECTION 7.250. Rules, Regulations and Procedures.** — The Rate Commission shall promulgate such operational rules, regulations and procedures which are not inconsistent with this Article 7.

**SECTION 7.260. Rate Commission Budget.** — As part of the District's budget process pursuant to Section 7.130, the Rate Commission shall submit to the Board an annual budget request of the Rate Commission's projected reasonable and necessary expenses, including but not limited to, funds for professional and consultant's fees, and supplies. If additional funds are required, the Commission may request the Board to appropriate additional funds.

**SECTION 7.270. Criteria Governing Rate.** — Any change in a Rate recommended to the Board by the Rate Commission in the manner as described in this Article, shall be accompanied by a statement of the Rate Commission that the proposed Rate change, and all portions thereof:

1. is consistent with constitutional, statutory or common law as amended from time to time;

2. enhances the District's ability to provide adequate sewer and drainage systems and facilities, or related services;

3. is consistent with and not in violation of any covenant or provision relating to any outstanding bonds or indebtedness of the District;

4. does not impair the ability of the District to comply with applicable Federal or State laws or regulations as amended from time to time; and

5. imposes a fair and reasonable burden on all classes of ratepayers.

**SECTION 7.280. Rate Procedures.** --

(a) The Rates in effect on the date this Amendment to the Plan becomes effective shall be deemed the "current rates." Any proposed Rate subsequently approved by the Board shall then become the "current rate" for purposes of this Section.

(b) Whenever the District proposes or recommends a change in Rate, it shall give written notice ("Rate Change Notice") to the Board and the Rate Commission and such change in Rate shall hereinafter be referred to as the "Proposed Rate Change". At the same time, the District shall publish the Rate Change Notice on three (3) separate days in one or more newspapers of general circulation in the District.

(c) The Rate Change Notice shall include a description of the Proposed Rate Change and the name, address, and telephone number of a person from whom information can be obtained.

(d) Upon receipt of a Rate Change Notice and after review of same, the Rate Commission shall cause at least one public hearing to be held on the record regarding the Proposed Rate Change set forth in the Rate Change Notice. Not less than five business days prior to such public hearing, the Rate Commission shall cause notice of such hearing to be given by mail, publication or electronic media, or such other form of communication as may be required by Missouri law. Management of the District, the

Page 24

Rate Commission Delegates, and any ratepayer who wishes to be heard on the Proposed Rate Change may testify or participate at any such hearing provided that the procedural requirements established by the Rate Commission under subsection (e) of this Section are satisfied.

(e) In order to conduct its proceedings with utmost expedition consistent with procedural fairness to the parties, the Rate Commission shall without limitation adopt rules which provide for:

    1. the advance submission of written testimony;

    2. the conduct of prehearing conferences to define issues, and for other purposes to insure orderly and expeditious proceedings;

    3. discovery both from the District and the parties to the proceedings; and

    4. limitation of testimony.

(f) The Rate Commission shall issue its Rate recommendation report ("Rate Commission Report") to the Board and to the public no later than one hundred twenty (120) days after receipt of a Rate Change Notice. The Rate Commission Report shall represent the majority view of the Rate Commission Delegates and shall include a statement specifically responsive to the criteria for setting Rates specified in Section 7.270. The Rate Commission may issue and deliver to the Board a minority report provided such report is so designated. Notwithstanding the foregoing, the Board may, upon application of the Rate Commission, extend the period of time for the issuance of the Rate Commission Report for one additional forty-five (45) day period.

(g) Notwithstanding any provision in this Plan to the contrary, the authority of the Rate Commission to conduct its proceedings hereunder and to issue a Rate Commission Report shall arise only after receipt by it of a Rate Change Notice from the District pursuant to Section 7.280(b).

**SECTION 7.290. Publication of Rate Change Documents. --**

(a) The District shall take the following action in connection with issuance of a Rate Change Notice:

    (1) Not later than (3) business days after the date of a Rate Change Notice, the District shall make available for public inspection and copying at its executive headquarters all reports, correspondence, memoranda, and contracts for services related to Rates between and among members of the District staff and between any member of the District staff and a third party which relate to the change in Rates proposed in the Rate Change Notice (collectively the "Rate Setting Documents"). Any interested party desiring copies of the Rate Setting Documents shall bear the copying cost therefor, but the District shall make copying facilities reasonably available so that any ratepayer can obtain the information without incurring an unreasonable administrative burden.

Page 25

(2) During the period beginning on the date of the Rate Change Notice and ending on the date the Trustees introduce an ordinance to change a Rate under Section 5.070 of this Plan, the District shall promptly make any additional materials which subsequently come into existence and which satisfy the aforesaid definition of Rate Setting Documents likewise available for public inspection.

(b) In addition to the provisions of subsection (a) of this Section, all of the proceedings and records of the Rate Commission shall be subject to the provisions of Chapter 610 of the Revised Statutes of Missouri as amended from time to time.

## SECTION 7.300. Action of the Board of Trustees. --

(a) No ordinance to effect a change in Rate shall be introduced for adoption under Section 5.070 of this Plan prior to the earlier of forty-five (45) days after receipt of the Rate Commission Report or forty-five (45) days after the date on which the Rate Commission Report is due, including extensions to the due date thereof.

(b) The Board shall accept the Rate Commission Report unless it finds that the Report, or any part thereof:

(1) is contrary to constitutional, statutory or common law as amended from time to time;

(2) substantially impairs the District's ability to provide adequate sewer and drainage systems and facilities or related services to the point where public health or institutional safety may be jeopardized;

(3) is contrary to or in violation of any covenant or provision relating to any outstanding bonds or indebtedness of the District;

(4) fails to meet an existing or new standard contained in applicable Federal or State laws or regulations as amended from time to time; or

(5) imposes an unfair or excessive burden on one or more classes of ratepayers.

(c) If the Board, after consideration at two Board meetings, fails to accept or reject the Rate Commission Report or any part thereof, the Rate Commission Report shall be deemed accepted by the Board.

(d) If the Board accepts the Rate Commission Report or if the Board is deemed to have accepted a Rate Commission Report as set forth in this Section, the Board shall enact an ordinance consistent with the Rate Commission Report.

(e) If the Rate Commission Report, or any part thereof, is rejected by the Board, the Board shall submit a written report to the Rate Commission explaining the reasons the Rate Commission Report was rejected. Rejection of a Rate Commission Report shall not prevent the Board from enacting an ordinance establishing Rates.

**SECTION 7.310. Taxes levied and collected — How and when.** — On or before the thirtieth day of June in each year and, if the District has delivered a Rate Change Notice to the Rate Commission pursuant to Section 7.280, after receipt by the Board of a Rate Commission Report setting forth any Proposed Rate Change, the Board shall determine the amount of taxes that will be required during the next succeeding fiscal year to pay interest falling due on bonds issued and the principal of bonds maturing in such year and the costs of operation and maintenance plus such amount as may be required to cover emergencies and anticipated tax delinquencies, and shall certify to the Board of Aldermen, Comptroller, License Collector, and Collector of the City of St. Louis the amount of such taxes which shall be levied, assessed, and collected on all taxable tangible property in the District or a subdistrict, as the case may be, within the corporate limits of the City of St. Louis, and shall certify to the County Council and Collector of St. Louis County the amount of such taxes which shall be levied, assessed, and collected on all taxable tangible property in the District or a subdistrict, as the case may be, within the corporate limits of St. Louis County. Upon receipt of such certificate, said officers of said city and county, respectively, at the time they make the levy for state, county, city, school, and other ad valorem taxes, shall levy such rate of taxation upon all taxable tangible property in the District or a subdistrict, as the case may be, within their respective jurisdictions as will produce the respective amounts of taxes certified. All officers of said city and county and of the state, concerned with the assessment and collection of taxes, fines, and penalties, shall perform such duties in relation to the levy, assessment, and collection of District and subdistrict taxes as are imposed by the existing law of this state upon such officers in relation to state, county, city, school, and other ad valorem taxes. All District and subdistrict taxes levied shall be based upon the assessed valuation of lands and other taxable tangible property in the District or a subdistrict, as the case may be, as may be determined by the records in the offices of the Assessor, Comptroller, and License Collector of the City of St. Louis and the Assessor and County Clerk of St. Louis County, and shall be collected and remitted to the Secretary-Treasurer of the District. All the laws, rights, and remedies provided by the laws of this state for the collection of state, county, city, school, and other ad valorem taxes shall be applicable to the collection of taxes herein authorized to be collected.

**SECTION 7.320. Determination of taxes to be levied in City and County portions of District.** — The Board shall in no case make a final determination of the amount of taxes which shall be levied, assessed, and collected on all taxable tangible property in the District or a subdistrict, as the case may be, within the corporate limits of the City of St. Louis and St. Louis County, respectively, until after the Board shall have held a public hearing in respect to such determination. A notice of such hearing shall be given by mail, publication or electronic media, or such other form of communication as may be required by Missouri law. Such notice shall state the time, place, and purpose of such hearing. After such hearing, the Board shall make a finding of fact and by ordinance shall determine the amounts of taxes which shall be levied, assessed, and collected on all taxable tangible property in the District or a subdistrict, as the case may be, within the corporate limits of said city and county, respectively, and shall set forth in such ordinance the relevant facts upon which such determination is based. Such finding of fact and such determination by the Board shall be final and conclusive.

**SECTION 7.330. Assessment and Taxation of Real Estate.** — One of the factors to be considered in the assessment and taxation of real estate for District or subdistrict purposes shall be the use to which it is being put at the time of the assessment, whether agricultural, industrial or other use, giving due regard to all provisions of the Constitution of the State of Missouri.

## ARTICLE 8

### PERSONNEL PROVISIONS

**SECTION 8.010. Human Resources Director – Duties.** – There shall be a Human Resources Director. The Human Resources Director shall:

(1) Hold competitive examinations for all appointments in the classified service, establish eligible lists, and certify names of eligibles to appointing authorities for filling vacancies in said service.

(2) Report annually to the Civil Service Commission of the District regarding the operation of the personnel provisions of this Plan.

(3) Prepare and recommend to the Civil Service Commission such rules as the Human Resources Director may consider appropriate to carry out the personnel provisions of this Plan.

(4) To advise, assist, and cooperate in fostering the interest of institutions of learning and civic, professional, and employee organizations in the improvement of personnel standards and conditions in the District.

(5) Perform such other duties with reference to personnel administration as may be required by ordinance or the Executive Director.

**SECTION 8.020. Civil Service Commission Appointment – Term – Removal – Compensation.** – There shall be a Civil Service Commission of three members, who shall be appointed by the Board. Members shall have the same qualifications as required for Trustees in Section 5.020 of this Plan, except that no member shall be a Trustee under this Plan. Members shall be persons who are known to be in sympathy with the application of merit principles to public employment. Members shall be appointed for a term of three years. Vacancies shall be filled by the Board for the unexpired term. No Commissioner shall serve more than two terms plus any portion of an unexpired term. Provided, however, that each Commissioner shall serve until his/her successor shall be appointed and qualified. A member may be removed by the Board for cause, after being given a written statement of the charges against him/her and after a public hearing thereon, if requested by him/her. The compensation of a member shall be the sum of twenty dollars for each day on which he/she actually attends a regular or special meeting of the Commission, not exceeding, however, the sum of five hundred dollars in any one fiscal year.

**SECTION 8.030. Civil Service Commission – Duties.** – Civil Service Commission shall:

(1) Advise the Board, Executive Director, and Human Resources Director on problems concerning personnel administration.

(2) Make any investigation which it may consider desirable concerning personnel administration in the District service and report to the Board at least once a year its findings, conclusions, and recommendations.

(3) Recommend civil service rules to the Board.

(4) Hear appeals from disciplinary action.

(5) To advise, assist, and cooperate in fostering the interest of institutions of learning and civic, professional, and employee organizations in the improvement of personnel standards and conditions in the District.

**SECTION 8.040. Classification of employees.** — The administrative service of the District is hereby divided into the classified and unclassified services as follows:

(1) The unclassified service shall include the Executive Director, Secretary-Treasurer, Internal Auditor, Assistant Executive Director, General Counsel, Assistant General Counsel, Director of Operations, Director of Administration, Director of Finance, all other Department Directors and Assistant Department Directors, Secretary to the Executive Director, and Secretary to the Board of Trustees or positions of like authority, responsibility and compensation.

(2) The classified service shall comprise all positions not specifically included by this Plan in the unclassified service.

**SECTION 8.050. Civil Service Rules.** — The Civil Service Commission shall hold a public hearing upon proposed civil service rules recommended by the Human Resources Director or by the Civil Service Commission. After such hearing, the Commission shall approve or reject the rules wholly or in part, or may modify them and approve them as so modified. The rules approved by the Commission shall then be submitted to the Board and shall become effective when adopted by ordinance. Such rules and ordinances shall include such provisions as may be necessary to establish a merit system for all positions in the classified service, and shall include a prohibition against the appointment, promotion, reduction, suspension, or removal of any officer or employee in the classified service, or seeking admission thereto, without just cause or because of his/her race, creed, or color, or because of his/her political, religious, or union opinions or affiliations, except affiliations with any group or organization which seeks or advocates the overthrow of the government of the United States by force or violence or because of any other reason prohibited by law.

**SECTION 8.060. Appeals from dismissals.** — Any employee under the classified service who shall be discharged, reduced in rank or compensation, or suspended without pay shall be presented with written reasons for such discharge, reduction, or suspension within five days thereafter. The employee shall have the privilege of a public hearing before the Civil Service Commission. If the Commission finds that the employee was discharged, reduced, or suspended without just cause or because of his/her race, creed, or because of his/her political, religious, or union opinions or affiliations, except affiliations with any group or organization which seeks or advocates the overthrow of the government of the United States

Page 30

by force or violence or because of any other reason prohibited by law, such employee shall be reinstated in his/her former position or a position of like status and pay and shall be reimbursed for any loss of pay. Such employee shall be entitled to legal counsel or representation of his/her own choosing if he/she so desires.

**SECTION 8.070. Salaries and other compensation.** — The Board shall by ordinance prescribe the salaries of the Executive Director the Secretary-Treasurer and the Internal Auditor. Except as otherwise provided in this Plan, the Board shall also by ordinance prescribe working conditions, salaries, vacations, sick leave, or other compensation or benefits of all other officers and employees of the District. Such salaries and other compensation and benefits shall conform to the prevailing wages and conditions in the areas affected by the Plan.

# ARTICLE 9

## IMPROVEMENTS

**SECTION 9.010. Institution of proceedings for improvements.** — All proceedings to make any improvements, except emergency work or repairs requiring prompt attention and ordinary maintenance work, shall begin by approval of a list of capital projects as part of the adoption of the general appropriation ordinance as provided in Section 7.130 of this Plan. When payment is to be made by special tax bills or other evidence of special benefit assessments upon real property, or out of the Improvement Fund, as herein provided, reimbursed by collection of such assessments, the list of capital projects shall state the proposed method of making such assessments to pay therefor. Any error or inaccuracy in the estimate of the probable cost of any such improvement as compared with the actual cost of the work shall not affect the validity of the list of capital projects or of any special benefit assessments made or special tax bills issued to pay for such work.

**SECTION 9.020. Improvements in subdistricts.** — For subdistricts that are established in accordance with the provisions of Article 3 of this Plan and any subsequent ordinances adopted by the Board, the owners of land in the prescribed boundaries of such subdistrict shall be granted the opportunity to vote as provided in the establishing ordinance on whether to proceed with the design and construction of the proposed improvements, to be paid for through the issuance of special tax bills. Property owners shall be furnished with the estimate of probable cost of the engineering design of the improvements. An affirmative vote as provided in the establishing ordinance shall authorize the District to proceed with preparation of plans and specifications for the proposed improvements at the expense of the subdistrict. In the event that an affirmative vote is not given to proceed as provided in the establishing ordinance to proceed with the design of the proposed improvements, the District shall cease further work. Upon substantial completion of said plans and specifications, the property owners shall then be furnished with the estimate of probable cost of constructing the improvements. An affirmative vote as provided in the establishing ordinance shall authorize the District to acquire the necessary easements and permits and construct the proposed improvements at the expense of the subdistrict. In the event that an affirmative vote as provided in the establishing ordinance is not given to proceed with constructing the proposed improvements, the District shall cease further work and issue special tax bills for the portion of engineering design and related administration performed to that point in accordance with the provisions of Section 9.060 of this Plan.

**SECTION 9.030. Contracts for improvements.** — When improvements are to be executed by contract, the District shall advertise for bids upon such notice and competition as may be prescribed by ordinance. All bids may be rejected. Except for such right of rejection, the Executive Director shall let the contract to the lowest responsible bidder and shall cause the contract to be formally executed by the contractor and by the Executive Director. Such contract, before it becomes binding and effective, shall be confirmed by ordinance adopted by the Board. All contracts for improvements which involve labor shall contain provisions that the prevailing rates of pay shall be paid to skilled and unskilled labor employed thereon and that there shall be no discrimination in the selection or employment of labor because of race, creed, or color; and such provisions shall be stated in the invitations for bids and shall be included in proposals or bids for the work.

**SECTION 9.040. Alternative Delivery Contracts.** — The District may use design-build and other alternative delivery methods to make any improvements as permissible by Missouri law. The use of design-build or other alternative delivery methods shall occur pursuant to the requirements of an ordinance enacted by the Board which allows such procurement. Improvements made using these alternative delivery methods will be made in accordance with said ordinance and as an alternative to the methods provided in Section 9.030 of this Plan.

**SECTION 9.050. Method of payment for improvements to be specified.** — All ordinances and contracts for improvements shall specify how the same are to be paid for. In case payment is to be made in whole or in part to the contractor in special tax bills or other evidence of special assessments, the District or subdistrict, as the case may be, shall in no event be liable for or on account of the work to be so paid for.

**SECTION 9.060. Special tax bills.** — Upon the completion of any work, the payment for which is to be made by special tax bills, the Board shall by ordinance direct the issuance of said tax bills. When said ordinance is approved, the tax bills authorized thereby shall become a lien upon the property charged therewith upon filing with the Recorder of Deeds of the City of St. Louis or the Recorder of Deeds of St. Louis County, as the case may be; provided, however, there shall be no priority between special tax bills issued under the Plan, regardless of the date of such bills. They shall be payable to the party entitled thereto either at the office of the Secretary-Treasurer or at some bank or trust company in the City of St. Louis or St. Louis County at the option of the party so entitled. They shall be promptly registered in the offices of the Director of Finance and Secretary-Treasurer and delivered to the person entitled thereto. They shall be prima facie evidence of what they contain and of their own validity, and no mere informality or clerical mistake in any of the proceedings shall be a defense thereto. Such tax bills shall mature at such times and bear such rate of interest as may be prescribed by the ordinance directing the issuance thereof, and at the request of the property owner may be made payable in annual installments, not exceeding ten.

**SECTION 9.070. Invalid assessments may be reassessed.** — If any such special tax bill or special benefit assessment shall fail to be valid in whole or in part, or if for any cause, mistake, or inadvertence the amount assessed shall not be sufficient to pay the cost of such improvements, the Board shall be and is hereby authorized to cause such assessment to be reassessed and to enforce or authorize the enforcement of its collection.

**SECTION 9.080. Property subject to special benefit assessment.** — All real property located within any benefit subdistrict established by the Board, whether publicly or privately owned, shall be liable for special benefit assessments made or special tax bills issued against such property. Any such assessment or tax bill shall constitute a personal obligation of the owner of such property as well as a lien against the property and may be collected by suit or other proceedings in any court of competent jurisdiction, and such assessment, tax bill, or judgment thereon, against public property shall be paid out of the general treasury of the public body, agency, corporation, or authority owning such property.

**SECTION 9.090. Improvement Fund.** — There is hereby created a fund to be known as the "Improvement Fund." Any moneys in said fund may be used to pay the cost of any improvement or to purchase any special tax bills issued for any improvement. Said fund may be established and maintained from any or all of the following sources:

(1) Appropriations from the general funds of the District when available.

(2) The proceeds from bond issues as provided in this Plan.

(3) Collections of special benefit assessments or special tax bills, and any interest thereon, levied or issued for work or condemnation of land theretofore paid for out of said Improvement Fund.

(4) The proceeds from the sale of special tax bills.

(5) Any other source permitted by law.

Whenever the Board shall authorize the cost of any improvement or the purchase of any tax bills issued for any improvement to be paid out of the Improvement Fund, any special benefit assessment and interest thereon that may be levied and collected on account of such improvement or the proceeds from the collection of any such tax bills and interest thereon shall be credited to and be paid into said fund.

**SECTION 9.100. Additional provisions relating to special benefit assessments.** — Upon recommendation of the Executive Director, the Board may, from time to time, by ordinance, make further provision, not inconsistent herewith, for special benefit assessments, the issuance of special tax bills, the collection thereof, and all matters incidental thereto.

ARTICLE 10

ELECTIONS

**SECTION 10.010. Conduct of elections under Plan — Eligible voters. —** Whenever an election is to be held under the provisions of this Plan, notice thereof shall be given once a week for three consecutive weeks, the first notice to be given at least 21 days prior to the date of the election and the last notice to be given not more than 7 days prior to the date of the election, such notice to be by mail, publication or electronic media, or such other form of communication as may be required by Missouri law. Such election shall be held and conducted and the returns thereof made, examined, and cast up in the same manner and in all respects as provided by law for the election of state and county officers. All registered voters residing in said District, subdistrict, or other area in which an election is to be held shall be entitled to vote at such election.

Page 35

ARTICLE 11

AMENDING THE PLAN

**SECTION 11.010. Amending the Plan.** -- Amendments to this Plan may be proposed and adopted in any one of the following ways:

(1) In the manner provided in the Constitution of Missouri for preparing, proposing, submitting, and adopting a complete plan.

(2) By ordinance adopted by the Board and submitted to the registered voters residing within the District at a general or special election and approved by a majority of those voting on the proposition in the portions of the District situated within the City of St. Louis and St. Louis County, respectively.

(3) By petitions signed by registered voters residing within the District in such number as shall equal five per cent of the total vote cast in the portions of the District situated within the City of St. Louis and St. Louis County, respectively, at the last general election for governor. Each petition shall contain the full text of the proposal and an enacting clause which shall read as follows: "Be it resolved by the people of The Metropolitan St. Louis Sewer District that the District Plan be amended:". The petitions shall be filed with the Board of Election Commissioners of the City of St. Louis and the Board of Election Commissioners of St. Louis County, respectively, which shall determine their sufficiency. Said boards shall submit the proposal to the registered voters residing within the District at the next state or county primary or general election day occurring not less than ninety days after the petitions are filed; provided, that the Board of the District may by ordinance provide for the submission of said proposal at a special election to be held not less than ninety days nor more than one hundred twenty days after said petitions are filed. An affirmative vote of a majority of those voting on any proposal in the portions of the District situated within the City of St. Louis and St. Louis County, respectively, shall be sufficient for its adoption.

**SECTION 11.020. Plan Amendment Commission — Appointment — Qualifications — Duties.** – On or before July 1, 2019, and every ten years thereafter, each Trustee shall appoint two members to a District Plan Amendment Commission, which shall be a commission. Trustees appointed by the Mayor of the City of St. Louis shall appoint members who are registered voters of the City of St. Louis, and Trustees appointed by the County Executive shall appoint members who are registered voters of St. Louis County. The Chair of the Board shall designate one of the members to serve as chair of the Commission. On the death, resignation or inability of any member to serve, the Trustee who originally appointed such member shall appoint a successor. Members of the Commission shall receive no compensation, but the District shall pay all necessary expenses of the Commission.

Prior to June 1 of the year following appointment, the Commission shall recommend to the Board any amendments to the Plan which the Commission deems appropriate. Any

Page 36

recommendation must receive the affirmative vote of eight members. On June 1 of the year following appointment, the Commission shall stand discharged and cease to exist.

## ARTICLE 12

## MISCELLANEOUS PROVISIONS

**SECTION 12.010. Judicial notice of the Plan.** — This Plan is hereby declared to be a public act, and all courts shall take judicial notice thereof.

**SECTION 12.020. Oath of office.** — Every officer, member of a board or commission, and head of a department or division shall, before entering upon his/her duties, take and subscribe, and file with the Secretary-Treasurer an oath or affirmation that he/she has all the qualifications and is not subject to any of the disqualifications named in this Plan for the office or employment he/she is about to assume; that he/she will support the Constitution of the United States and of this state and the Plan and ordinances of the District and that he/she does not and will not belong to any organization that seeks to overthrow the government of the United States; that he/she will be influenced only by the consideration of fitness in the appointment, promotion, demotion, suspension, or discharge of officers or employees; and that he/she will demean himself/herself faithfully in office.

**SECTION 12.030. Officers and employees interested in contracts.** — No officer or employee of the District shall use his/her official position to induce or influence any District contract, sale, purchase, or other transaction in which he/she has a financial or beneficial interest, and any contract with the District or any sale to or by the District of any land, materials, supplies, or services which is induced or influenced by any financial or beneficial interest of any officer or employee of the District, except on behalf of the District as an officer or employee, shall be voidable. Any willful violation of this section shall constitute malfeasance in office and any officer or employee found guilty thereof shall thereby forfeit his/her office or employment.

**SECTION 12.040. Judicial bonds.** — The District shall not be required to give bond in any judicial proceeding or appeal.

**SECTION 12.050. Power to administer oaths.** — Each Trustee and the Secretary-Treasurer may administer oaths or affirmations in any matter pertaining to the affairs and government of the District.

**SECTION 12.060. Effect of Plan on existing ordinances, orders, rules, and regulations.** — All existing ordinances, orders, rules, and regulations pertaining to matters which are by this Plan placed under the jurisdiction of the District herein created, shall remain in full force and effect until superseded by ordinances, orders, rules, or regulations of the District.

**SECTION 12.070. Pending actions and proceedings.** — No action or proceeding, civil or criminal, pending at the time this Plan shall take effect, brought by or against any municipality or sewer district situated within the boundaries of the District, or any office, department, agency, or officer thereof shall be affected or abated by the adoption of this Plan or by anything herein contained.

**SECTION 12.080. Effect of Plan on existing sewer districts and sewer departments of municipalities.** — The existing organization of sewer districts and sewer departments of municipalities within the District shall continue until further provisions applicable thereto shall be provided, as authorized in this Plan.

**SECTION 12.090. Existing municipalities, sewer districts, and other public agencies to pay bonds and other liabilities now outstanding.** — If any existing municipality, sewer district, or other public agency situated within the District shall on July 1, 1954 have outstanding and unpaid any sewer bonds or liabilities, the creation of the District under this Plan and the transfer and dedication of the sewer systems and facilities of said municipality, sewer district, or other public agency, to the uses and purposes of the District, shall not affect or alter in any way the said bonds and liabilities, nor shall it affect or alter the rights or obligations thereunder.

The liability of any municipality, sewer district, or other public agency under any contract for the payment of proportionate parts or shares of the cost of sewer construction or reconstruction work completed or started before July 1, 1954, which liability has accrued and the amount thereof been determined before said date, shall remain in full force and effect and be discharged in the manner provided in such contract. All other liabilities under any such contract shall terminate from and after July 1, 1954.

If the District shall at any time use any existing sewage treatment or disposal plant to serve any area or areas not situated within the boundaries of the municipality, sewer district, or other public agency which constructed said plant, and at such time said municipality, sewer district, or other public agency has outstanding and unpaid any bonds which were issued wholly or partly for the construction of said plant, the Board shall ascertain what proportion of the proceeds of such bonds were expended for said plant. Thereafter and until such time as the District shall discontinue the use of said plant, a corresponding proportion of the remaining principal and interest charges on such bonds shall be borne by a subdistrict. Such subdistrict shall be established as provided in this Plan and shall include the area situated within said municipality, sewer district, or other public agency and any other area or areas served by said plant. The Board shall by ordinance impose the taxes or charges within the subdistrict necessary to pay such principal and interest.

If the District shall at any time discontinue the use of any existing sewage treatment or disposal plant, and at such time any municipality, sewer district, or other public agency previously owning said plant has outstanding and unpaid any bonds which were issued wholly or partly for the construction of said plant, the Board shall ascertain and determine what proportion of the proceeds of such bonds were expended for said plant, and thereafter a corresponding proportion of the remaining principal and interest charges on such bonds shall be borne by a subdistrict. Such subdistrict shall be established as provided in this Plan and shall include all the area or areas capable of being efficiently served by the sewer facilities the construction of which makes it possible to discontinue the use of said plant. The Board shall by ordinance impose the taxes or charges within the subdistrict necessary to pay such principal and interest.

So long as any bonds or liabilities of any such sewer district shall remain unpaid or shall not have been otherwise discharged, the said sewer district shall be continued in existence as heretofore organized under the laws of Missouri for the purpose of paying or discharging such bonds and liabilities and without interruption or diminution of the powers and authority granted to it by law. Any existing sewer district which has no bonds or liabilities on said date, or any sewer district which at any time thereafter pays in full or otherwise discharges its bonds and liabilities, may thereafter be dissolved and the board of trustees of such sewer district shall provide for the disposition of its property and assets.

**SECTION 12.100. Proof of District ordinances and records.** — All ordinances, resolutions, orders, rules, and proceedings of the Board may be proved by the certificate of the Secretary-Treasurer under the District's seal, and the same or copies thereof when so certified or when printed or published by authority of the Board shall be received in evidence in all cases and places and by all courts without further proof. Copies of the books, records, and papers, or parts thereof, of any department, office, commission, or agency of the District when duly certified by the officer having custody and control of any such books, records, and papers shall be prima facie evidence of the recitals therein contained and shall be received in evidence in all places and by all courts without further proof.

**SECTION 12.110. Appeals from decisions and orders of District officers.** — Any person or persons jointly or severally aggrieved by any decision or order of the Board or any officer of the District may present to the Circuit Court in the City of St. Louis or the Circuit Court in St. Louis County, as the case may be, a petition, duly verified, setting forth that such decision or order is illegal, in whole or in part, and specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision or order in the office of the Board or officer of the District, as the case may be. Upon the presentation of such petition, the court may allow a writ of certiorari directed to the Board or officer of the District, as the case may be, to review such decision or order of the Board or officer of the District, as the case may be, and shall prescribe the time within which a return thereto may be made and served upon the aggrieved person or his/her attorney, which shall be not less than ten days and may be extended by the court. The allowance of the writ shall not stay proceedings upon the decision or order appealed from, but the court may, on application, on notice to the Board or officer of the District, as the case may be, and on due cause shown, grant a restraining order. The Board or officer of the District, as the case may be, shall not be required to return the original papers acted upon by it or him/her, but it shall be sufficient to return certified or sworn copies thereof or such portions thereof as may be called for by such writ.

The return shall concisely set forth such other facts as may be pertinent and material to show the grounds of the decision or order appealed from, and shall be verified. If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take additional evidence or appoint a referee to take such evidence as it may direct and report the same to the court with his/her findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision or order brought up for review.

Costs shall be allowed as provided by law. All issues in any proceedings under this section shall have preference over all other civil actions and proceedings.

**SECTION 12.120. Effect of unconstitutional provisions.** — If any section, subsection, sentence, clause, or phrase of this Plan is for any reason held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this Plan. The people of the District hereby declare that they would have adopted this Plan, and each section, subsection, sentence, clause, and phrase thereof, irrespective of the fact that any one or more of the same shall be declared unconstitutional.

## AUTHENTICATION OF THE PLAN

On this 9th day of November, 1953, we the undersigned Chairman, Vice-Chairman, Secretary, and the other members of the Board of Freeholders appointed pursuant to Section 30 of Article VI of the Constitution of the State of Missouri for the purpose of preparing a plan for a metropolitan sewer district under the provisions of said section, hereby certify that the above and foregoing is a true and complete copy of the Proposed Plan of The Metropolitan St. Louis Sewer District prepared and approved by us for submission to the qualified voters of the City of St. Louis and St. Louis County at special elections to be held separately in said city and county on Tuesday, February 9, 1954.

**IN WITNESS WHEREOF** we have hereunto subscribed our names.

ATTEST:                          J. Eugene Auchly, Chairman

                                 John R. Shepley, Vice-Chairman

                                 Mrs. Jules Kopp, Secretary

                                 Mack A. Aldrich

                                 John C. Casey

                                 Horace B. Deal

                                 Alfred J. Dill

                                 Don A. Fischer

                                 Harold Garner

                                 Charles N. Gilles

                                 Robert M. Guion

                                 Walter C. Haeussler

                                 Dr. Henry E. Hampton

                                 Theodore A. Kienstra

                                 William R. Lake

                                 Mrs. Chapin S. Newhard

Page 42

William A. O'Connell

Rudolph W. Stuckenberg

Lloyd C. Weber